**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**TOBBY LYNN SMALL,**

        **Plaintiff,**

**VS.**                       **Case No 1:10cv121**
                                **The Honorable Irene M.  Keeley**

**JAMES R.  RAMSEY, et al.,**

        **Defendants.**

### <u>MEMORANDUM OPINION/ORDER</u>

On the  15 June 2011 Plaintiff [Small] filed his motion to compel discovery form Defendants Jack B. Kelley, Inc. [Kelley], Willie McNeal [McNeal] and Amerigas Propane LP [Amerigas] also hereinafter sometimes referred to as "Defendants."   [DE 236].   On the same date Defendants Kelley, McNeal and non-party Crawford and Company filed their motion to quash or in the alternative objection to subpoena [DE 237].   On the same date Defendants' Kelley, McNeal and non-party Crawford and Company filed their motion for the Court's *in camera* review of Mark P. Griffith's file [DE 238].

20 June 2011 the Court entered an order in part directing:   "McNeal, Keeley [sic] Crawford and Company and Griffith to file and serve a privilege log containing the information set out in LR Civ. P. 26.04 for each of the documents it claims is privileged..." [DE 243].

Kelley, McNeal and Amerigas filed their response to Small's motion to compel on 30 June 2011 [De 249] attaching thereto an "Affidavit of John Donovan" and  a "Privilege Log".

5 July 2011 Defendants Kelley, McNeal, Amerigas and non-party Crawford and Company filed a "Privilege Log" [DE 238].

14 July 2011 Small filed a combined response and reply responding to the motion to quash[1] subpoena and replying in support of his motion to compel discovery [DE 259].

21 July 2011 Kelley, McNeal, Amerigas[2] and non-party Crawford and Company filed their reply to Small's response to the motion to quash filed by Kelley, McNeal and non-party Crawford and Company [DE 265].

The parties appeared before the court by counsel on 5 August 2011 for hearing on the motions. Counsel appearing in behalf of Plaintiff were: David J. Romano and David E. Goddard. Counsel appearing in behalf of Defendants Kelley, McNeal and Amerigas and non-party Crawford and Company (including its investigator Mark P. Griffith) was Peter T. DeMasters. Other counsel appeared for other parties but did not actively participate in the hearing. The Court heard arguments concerning the issues raised by the motions. Although the Court invited testimony or evidence, no such testimony or evidence was received or offered.

Generally and simply stated, the following issue is presented: Is information developed by CNA on behalf of its insureds after 23 February 2010 discoverable by Small through discovery requests and a deposition of Mark Griffith, or is that information shielded from such discovery by the attorney client privilege and/or opinion and fact work product privilege as asserted?

At the conclusion of the hearing the record was closed and the matter was taken under consideration.

MOTION TO COMPEL

I. Background

Toby Lynn Small alleges that on 20 February 2009 he slid on an icy bridge along the

---

[1]Small's response to the motion to quash erroneously included Amerigas in the style. Amerigas was not a party to the motion as originally filed.

[2]Amerigas was not a party to the original motion to quash filed by Defendants Kelley, McNeal and non-party Crawford and Company.

Southbound lane of I-79 near mile marker 96. He either slid or drove into the median. He further

alleges he got out of his vehicle to survey any damage. He was standing near his vehicle when a

vehicle driven by James R. Ramsey slid on ice and in front of an 18 wheeler truck resulting in the 18

wheeler truck ultimately striking the Ramsey vehicle and then crossing from the slow lane into the

passing lane and into the median striking a high tension median cable barrier. Some portion of the

high tension median barrier system contacted Small. Small claims he was seriously injured.

Within hours following the collision CNA, insurer for Kelley and McNeal received notice of

the collision and hired independent adjuster Mark P. Griffith of Crawford and Company as a

"consultant to go to the scene of the accident to check on the condition of the driver and to take the

driver to be drug tested as is required." [DE 237 p.2].

Griffith telephoned an initial report to CNA. Senior claims examiner at CNA, John Donovan,

from Griffith's initial telephonic report[3] made a decision on the date of the accident that the accident

was serious and involved serious injuries and CNA needed to hire a lawyer to represent the interests

---

[3]Donovan's affidavit states: "5. When the instant accident happened, I was told about the severity of the accident and that at least one person seemed to be severely injured. 6. Because of the severity of the accident and severity of the injuries, I believed that this matter would result in litigation against the insured. 7. On Friday, February 20, 2009, I retained Crawford and Company independent adjusters to go to the accident scene, take some photographs and take the driver to his mandatory drug and alcohol testing. 8. I also told the independent adjuster that I would immediately hire an attorney to represent the insureds, Jack B. Kelley, Inc. and Willie McNeal, to prepare the matter for litigation and to investigate the case. 9. Because I anticipated that the matter would result in litigation against Jack B. Kelley, Inc., and Willie McNeal, I hired an attorney on the morning of February 23, 2009. 10. In my first communication with the independent adjuster I informed him that everything he did after the initial photographs and drug test would be at the direction of the attorney that was representing Jack B. Kelley, Inc. And Willie McNeal and the attorney would be in touch with him. 11. Everything after the initial call that was done by Crawford and Company was not part of the normal claims adjustment process and was done in anticipation of litigation against Jack B. Kelley, Inc., and Willie McNeal and by the attorney for Jack Bl Kelley, Inc., and Willie McNeal." [DE 249, p. 2-3 Affidavit]. Since there was no other parallel or independent investigation of the accident by CNA on or at any time after the one initiated by Crawford and Company on 20 February 2009, Donovan made his decisions based on the initial telephone call he received from Griffith on 20 February even though that is not exactly what he says or implies in the language of his affidavit.

of Jack B. Kelley, Inc., and Willie McNeal.

Donovan advised Griffith that everything he did after taking some photographs and seeing that McNeal, the driver of the 18 wheeler, got to the hospital to give his DOT required blood test would be done at the direction of the attorney that was representing Jack B. Kelley, Inc. And Willie McNeal and the attorney would be in touch with him.

Three days later, on the morning of 23 February 2009, CNA hired attorney DeMasters to represent Jack B. Kelley, Inc., and Willie McNeal.

Other than the initial report of Griffith to Donovan, Donovan had no other facts concerning the accident of 20 February 2009 on which to base his conclusion that the matter would involve litigation. He had no information that anyone involved had retained the services of an attorney to represent his interests in any claim arising out of the accident. No claim had been made or threatened. Small was likely in the hospital (Ruby Memorial) awaiting or in surgery when Donovan made his decision. Griffith had not talked with Small. DeMasters responded to the Court's inquiry during the hearing that no investigation was conducted on behalf of CNA parallel or independent of that being conducted by Crawford and Company through Griffith.

Small filed suit in the Circuit Court of Harrison County, West Virginia on or about 12 July 2010. The case was removed to federal court 5 August, 2010 where the same remains pending pre-trial discovery to be completed by 30 December 2011 and preparation for a trial now scheduled for 9 July 2012.

Small served discovery requests on the defendants on 25 April 2011. As a result of agreed extensions, responses to the following specific requests were due on 27 May 2011:

A.      Kelley = Requests 2, 3, 13, 15, 16, 17 and 25;

B.      McNeal = Requests 2, 3, 15, 22, 23, 24, and 34;

C.      Amerigas = Requests 2, 3, 11, 13, 14, 15, and 19.

Each of the above three defendants filed responses to the above enumerated requests on

27 May 2011.

The responses contained objections.

Small's counsel conversed in some manner with counsel for defendants on 25 May 2011 advising defendants the information sought was discoverable. Defendants' counsel expressed that they intended to object to the discovery requests.

7 June 2011 Small's counsel faxed to Defendants' counsel a detailed letter explaining why Small believed the materials sought were discoverable and not protected by the attorney client privilege or work product privilege.

Defendants did not further respond.

Defendants did not produce a privilege log prior to the motion to compel being filed.

## II Contenitons

Plaintiff:

1.    Defendants' initial responses made  27 May 2011 contained "blanket objections" resulting in Defendants waiving their objections.

2.    Defendants' initial responses made 27 May 2011 did not include a privilege log resulting in the claims of privilege asserted in the objections being waived.

3.    Defendants have failed to timely carry their burden to show they are entitled to claim either the attorney-client privilege or the work product privilege (opinion or fact).

4.    The documents sought in discovery are insurance investigation files prepared in the ordinary course of business and not in anticipation of litigation and therefor ordinarily discoverable.

Defendants:

1.    Everything prepared by Crawford and Company, Mark Griffith and in the CNA's files after counsel was retained on February 23, 2009 is protected by the attorney client privilege and or work product privilege because it was prepared outside of the ordinary course of business and in anticipation of litigation.

2. The investigation was directed by legal counsel retained earlier than usual because of the severity of the accident and the severity of the injuries which led CNA to anticipate litigation would follow.

3. Small does not argue he has substantial need for the materials and documents sought in discovery or that he cannot without undue hardship obtain substantially equivalent information by other means.

4. Defendants did not file a privilege log when they filed their objections because they did not have the documents from the person who investigated the accident.

## III. Discussion

### A. Standards

NDWV Magistrate Judge Seibert outlined standards that may be applicable to discovery disputes in his decision in Weirton Steel Corp, Liquidating Trust v. Zurich Speciaties London, LTD, 2009 U.S. Dist. LEXIS 4848 (N.D.W.Va. January 23, 2009). This court updated them. This court adopts the following as "boiler-plate law" that may be applicable to discovery disputes in general.

#### 1. Discovery - Scope
Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

#### 2. Discovery - Scope
A Party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). In addition, "the discovery rules are given 'a broad and liberal treatment.'" Nat'l Union Fire Ins. Co. Of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc., 967 F.2d 980, 983 (4th Cir. 1992)(quoting Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 491 (1947)). However, the discovery sought must be relevant. Fed. R. Civ. P. 26(b)(1); see also St. Bernard Sav. And Loan Ass'n v. Levet, Civ. A. No. 91-4493, 1993 U.S. Dist. LEXIS 13283, 1993 WL 386321, at *1(E.D. La. Sept. 16, 1993)(stating that "the Rule 26 requirement that material sought in discovery be relevant should be firmly applied and courts should exercise appropriate control over the discovery process").

3.  Discovery - Relevancy

A court must strike a balance between the broad scope of the rules of discovery and the discovery of relevant evidence that is ultimately deemed admissible or inadmissible at trial. The test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(b)(1) ("relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). In striking the appropriate balance between these two tensions, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." Hinkle v. City of Clarksburg, West Virginia, 81 F.3d 416k, 426 (4th Cir. 1996) (citations omitted).

4.  Discovery - Interrogatories

Federal Rule of Civil Procedure 33 governs interrogatories. It states that "Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."

5.  Discovery - Interrogatories and Time to Respond

Federal Rule of Civil Procedure 33(b)(2) governs time to respond. It states that "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court."

6.      Discovery - Objections to Interrogatories

All objections must be stated with specificity and any objection not raised is waived. Fed. R. Civ. P. 33(b)(4). "Mere recitation of familiar litany that interrogatory is 'overly broad, burdensome, oppressive, and irrelevant'" does not suffice as specific objection. Monmah v. Albert Einstein Medical Center, 164 F.R.D. 412, 417 (E.D.Pa. 1996) (quoting Josephs v. Harris Corp., 677 F.2d 985, 992 (3rd Cir.1982)).

7.  Discovery - Motion to Compel

Motions to compel responses to interrogatories and requests for production are governed by Federal Rule of Civil Procedure 37(a)(2)(B). This Rule provides that if a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request." *Id.*

8.  Discovery - Motion to Compel - Burden of Proof

The party opposing a motion to compel bears the burden of showing why it should not be granted. Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D.Pa. 1980; Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D.W.V. 1970).

9.  Discovery - Duty to Respond Fully and Completely

No Gamesmanship: Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond. Gamesmanship to evade answering as required is not allowed. Hansel v. Shell Oil Corporation, 169 F.R.D. 303 (E.D.Pa. 1996).

10. <u>Sanctions - Fourth Circuit Four Part Test</u>
Four factors must be considered in determining what sanctions to impose: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." <u>Southern States Rack & Fixture, Inc. V. Sherwin-Williams Co.</u>, 318 F.3d 592, 597 (4th Cir. 2003) (quoting <u>Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians</u>, 155 F.3d 500, 504 (4th Cir. 1998)).

11. <u>Sanctions - When Not Appropriate</u>
Sanctions are not appropriate "When it has been established that failure to comply has been due to inability, and not wilfulness, bad faith , or any fault of the non-complying party." <u>Wilson v. Volkswagen of Am.</u>, 561 F.2d 494, 503 (4th Cir. 1997).

12. <u>Discovery - Limits - Claims of Privilege</u>
A claim of privilege must be express and the nature of the communication, document or thing described with particularity. F.R.Civ.P. 26(b)(5). The 1993 advisory committee notes to Rule 26(b)(5) state this section requires notification to other parties that a claim of privilege is being made. The advisory committee notes provide that withholding of material without notice is contrary to the rule, subjects the party to sanctions and may be viewed as a waiver. Rule 26.04 (2) of the local Rules of Civil Procedure provides the following detailed requirements for claims of privilege: <u>Hawkins v. Stables</u>, 148 F.3d 379 (4th Cir. 1998).

13. <u>Discovery - Claims of Privilege - Waiver</u>
The advisory committee notes to Rule 26(b)(5) of the Federal Rules of Civil Procedure make clear that failure to comply with the rule may constitute a waiver of the privilege. When a party files a boiler plate objection, refuses to comply with the rule and the Court finds the request is not patently improper, finding waiver of privilege is appropriate. <u>Pham v. Hartford Fire Ins. Co.</u>, 193 F.R.D. 659, 662 (D. Colo. 2000).

14. <u>Discovery - Duty to Supplement</u>
Once the discovery process has commenced, a party has a "duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(2). <u>Howard v. Milam</u>, 905 F.2d 1529 (4th Cir. 1990)(unpublished).

15. <u>Discovery - Work Product</u>
"Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials

when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3).

"The work product doctrine serves to protect from disclosure material prepared by an adversary's counsel with an eye toward litigation. The privilege encompasses such things as interviews, statements, memoranda, correspondence, briefs, mental impressions, and personal beliefs." "In effect, Jason's Enterprises asks this court to hold that litigation only became a realistic possibility on April 23, 1993, when GAI sent the letter voiding the policy. By this logic, any documents prepared prior to that date cannot be privileged as work product. We reject this contention. Obviously, GAI was investigating the fire loss prior to April 23, and it likely formed an opinion about Jason's Enterprises' misrepresentations and the possibility of litigation prior to that date. We see no merit to a bright-line holding which would render only those documents prepared after a claim is denied or a policy voided subject to the work product privilege." The Court also rejected any claim that Jason's Enterprises was entitled to discover the insurance claim file because Jason's Enterprises "utterly failed to articulate any reason to believe that it had a substantial need for the documents, or that it would be unable to obtain their equivalent without undue hardship." The Court also rejected Jason's Enterprises claim that the district court erred in quashing the subpoena served on the investigator retained to assist GAI in its investigation stating: "The work product privilege applies to protect documents prepared in anticipation of litigation 'by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.' Fed.R.Civ.P 26(b)(3). Because CNL was an agent or consultant to GAI, CNL's documents generated pursuant to that relationship clearly fall within the scope of protection contemplated by Rule 26. Accordingly, GAI was entitled to assert the privilege over documents prepared for it by CNL, which were in CNL's possession. It follows, therefore, that GAI had standing to move to quash the subpoena that sought those documents directly from CNL." Jason's Enterprises, Incorporated v. General Accident Insurance Company of America et al, Civ. A. No. 95-2553, 1996 U.S. App. LEXIS 15350, 35 Fed. R. Serv 3d 274 June 26, 1996)(per curium).

16. Work Product Doctrine - Applicable Law

"[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a ... person ... shall be determined in accordance with State law." F.R.Evid. 501. "[W]here an action is governed by federal law, issues of privilege are determined in accordance with federal common law. Where, however, ... the matter before the is based upon diversity of citizenship, 'the privilege [attorney client] ... shall be determined in accordance with state law.'" In re Air Crash at Charlotte, North Carolina on July 2, 982 F. Supp. 1052, 1053 (D.S.C. 1995)(internal citations omitted).

In "diversity cases, unlike the attorney client privilege, federal common law and the federal rules govern the application of the work product doctrine." Bradley v. Sunbeam Corp., 2003 U.S. Dist. LEXIS 14451 *4 (N.D.W.Va. August 4, 2003); Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 1999)(en banc); Pyramid Controls,

Inc. V. Siemens Indus. Automations, 176 F.R.D. 269 (N.D. Ill. 1997).

"An appellate court review a district court's decision concerning application of the work product privilege for abuse of discretion." Jason's Enterprises, Incorporated v. General Accident Insurance Company of America et al, Civ. A. No. 95-2553, 1996 U.S. App. LEXIS 15350, 35 Fed. R. Serv 3d 274 June 26, 1996) eg. In re Grand Jury Subpoena, 884 F.2d 124, 128 (4th Cir. 1989).

"Appellate court reviews attorney-client privilege determinations by district courts under a two-fold standard of review; if the district court's ruling rests on findings of fact, appellate court reviews for clear error, but if the district court's decision rests on legal principles, appellate court applies the de novo standard of review." Hawkins v. Stables, 148 F.3d 379 (4th Cir. 1998)

17. Work Product Doctrine - Two Contexts
Work product protection should be analyzed in two contexts: Fact work product and Opinion work product. "Both are generally protected and can be discovered only in limited circumstances. Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship .... Opinion work product is even more scrupulously protected as it represents the actual thoughts and impressions of the attorney, and the protection can be claimed by the client or the attorney." In re Grand Jury Proceedings, 33 F.3d 342, 348 (4th Cir. 1994)(internal citations omitted).

Opinion work product enjoys nearly absolute immunity and can be discovered in only very rare and extraordinary circumstances. State ex rel. United Hosp. Center, Inc. v. Bedell, 199 W.Va. 316, (1997).

Documents prepared in regular course of compiler's business, rather than specifically for litigation, even if it is apparent that party may soon resort to litigation, are not protected from discovery as work product.... For purposes of claim that document is protected by work-product rule, determination of whether document was prepared in anticipation of litigation or in ordinary course of business if factual one. State ex rel. United Hosp. Center, Inc. v. Bedell, 199 W.Va. 316, (1997).

18. Discovery - Work Product Doctrine - Insurance Claim Files
Because an insurance company is in the business of investigating claims, investigatory files are normally prepared in the ordinary course of the insurance company's business although the files were prepared with an eye toward reasonably foreseeable litigation. Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 536, 541 (N.D.W.Va. 2000); Video Warehouse of Huntington, Inc. V. Boston Old Colony Ins. Co., 160 F.R.D. 83, 85 (S.D.W.Va. 1994); State Farm Fire and Cas. Co. V. Perrigan, 102 F.R.D. 235, 237 (W.D.Va. 1984).

19. Attorney Client Privilege-Federal
Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision

thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.  Federal Rule of Evidence 501.

Burden is on the proponent of the attorney-client privilege to demonstrate its applicability.

Attorney-client privilege applies only if (1) asserted holder of privilege is or sought to become client;  (2) person to whom communication was made (a) is member of bar or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) communications relates to fact of which attorney was informed (a) by his client (b) without presence of strangers (c) for purpose of securing primarily either (i) opinion on law or (ii) assistance in some legal proceeding, and not (d) for purpose of committing crime or tort; and (4) privilege has been (a) claimed and (b) not waived by the client.

Attorney-client privilege impedes the full and free discovery of the truth, and thus, the privilege is to be narrowly construed, and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.

When attorney-client privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure.

Client is the holder of the attorney-client privilege, and can waive it either expressly or through conduct.

As a general rule, implied waiver occurs when the party claiming the attorney-client privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege, as such disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege.

Disclosure of confidential information to individual not embraced by attorney-client privilege not only waives the privilege as to the specific information revealed, but also waives the privilege as to the subject matter of the disclosure.
Hawkins v. Stables, 148 F.3d 379 (4th Cir. 1998)(internal citations omitted).

20.  Attorney-client Privilege - West Virginia
In order to assert attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential.  State v. Burton, 133 W.Va. 40, 48 (1979); State ex rel U.S. Fidelity and guar. Co. v. Canady, 194 W.Va. 431, 442 (1995).

B.     Blanket Objections

Defendants filed objections to each of the enumerated discovery requests now in dispute. Generally, Defendants objected on the grounds that the discovery requested was prepared in anticipation of litigation and therefore protected by the attorney-client privilege and work-product privilege.  See the following objections:

Kelley Request 13, McNeal Request 15 and Amerigas Request 11:

    Kelley:  "Furthermore, any such investigation was conducted in anticipation of litigation,.... Furthermore, any such investigation is protected by the attorney client privilege and/or work product doctrine." McNeal and Amerigas: Objection to the extent that this requests seeks attorney client privileged information protected by the work product privilege.  Further, this request seeks information prepared in anticipation of litigation by an attorney or consulting experts.... not required to be produced in accordance with Federal Rule 26(b)(3)...."

Kelley Request 15, McNeal Request 22 and Amerigas Request 13:

    Any such information was prepared in anticipation of litigation,.... "Furthermore, this information is protected by the attorney client privilege and work product doctrine."

Kelly Request 16, McNeal Request 23 and Amerigas Request 14:

    Any such information was prepared in anticipation of litigation,.... "Furthermore, this information is protected by the attorney client privilege and work product doctrine."

Kelley Request 25, McNeal Request 34 and Amerigas Request 19:

    Any such information was prepared in anticipation of litigation,.... "Furthermore, this information is protected by the attorney client privilege and work product doctrine."

Fed.R.Civ.P. 26(b)(5)(A): provides: "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party **must**  (i) expressly make the claim; and (ii) describe the nature of the documents,

communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." [emphasis added].

The Court finds the objections filed by Defendants (noted above) comply with the requirement that the claim of privilege be expressly made within the response time allowed. (Fed.R.Civ.P. 26(b)(5)(A)(i)) and LRCivP 26.04(a)(1). The Court further finds the objections are not "[m]ere recitation of familiar litany that interrogatory is 'overly broad, burdensome, oppressive, and irrelevant'" identified as "boiler-plate" type of objections addressed in <u>Monmah v. Albert Einstein Medical Center</u>, *supra at* 417.

C.    Privilege Log

However, Defendants did not file a privilege log at the time the initial objections were filed as required by Fed.R.Civ.P. 26(b)(5)(A)(ii) and LRCivP 26.04(a)(2)(i)(A) and (B)[4]. Defendants' explanation for not doing so is that their counsel did not have the documents in his possession.

In each of Defendants' initial responses and objections except Kelley Request 13, McNeal Request 15 and Amerigas Request 11, Defendants assert: "Finally, the requested documents, if any,

---

[4]LRCivP26.04(a)(2)(i)(A) and (B) provide: (2)(i) Where a claim of privilege is asserted in objecting to any means of discovery or disclosure including, but not limited to, a deposition, and an answer is not provided on the basis of such assertion: (A) The attorney asserting the privilege shall identify the nature of the privilege (including work product) that is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked and certify the attorney had reviewed each document for which privilege is asserted; and (B) The following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (1) For documents: (a) the type of document, e.g., letter or memorandum; (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other; (2) For oral communications: (a) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (b) the date and place of communication; and the general subject matter of the communication.

are not in the possession, custody, or control of this defendant."

Based on the facts derived from the pleadings and the arguments made at the hearing it is reasonable for the Court to conclude that Defendants' counsel, Mr. DeMasters, believed all materials developed after February 23, 2009 were protected from disclosure under the attorney client privilege and or work product doctrine because he became involved in the investigation as retained counsel[5]. He believed this even though he did not have those documents in front of him to use in the preparation of a contemporaneous privilege log as required by Fed.R.Civ.P. 26(b)(5)(A)(ii) and LRCivP 26.04(a)(2)(i)(A) and (B). Defendants did file such privilege logs later after obtaining possession of the documents. Moreover, failure to file the privilege log contemporaneous with the making of the objection and withholding of the materials does not mandate waiver. As previously noted, the 1993 advisory committee notes to Rule 26(b)(5) state this section requires notification to other parties that a claim of privilege is being made. Those advisory committee notes also provide that withholding of material without notice is contrary to the rule, subjects the party to sanctions and **may be viewed as a waiver** [emphasis added].

For the reasons stated on the record of the hearing, this Court is reluctant to declare waiver of the attorney client privilege and work product privilege claimed in objections timely filed because of a procedural default - the failure to file a privilege log contemporaneous with the objections or the failure to file an adequate privilege log. Substantive review over procedural default is clearly preferred. In reaching this conclusion this Court relies on an order entered by the Fourth Circuit Court of Appeals *In re*: Sunbeam Products, Incorporated at the direction of Judge Niemeyer, concurred in by Judges Traxler and King. The appellate court vacated this court's April 19, 2002 order requiring the production of documents over which an attorney-client privilege or other privilege had been

_____

[5]Defendants provided in discovery the photographs and materials gathered by independent investigator Mark P. Griffith from his hire on February 20, 2009 and when Mr. DeMasters was retained as counsel on the morning of February 23, 2009.

asserted and remanded the case with instructions that Sunbeam Products, Inc. be given an opportunity to amend the privilege log or otherwise present its grounds for asserting the privilege to the extent necessary to permit the court to rule on the merits of the asserted privilege. Admittedly, the <u>Bryte v. Sunbeam</u> case 2:00cv93 involved an oral order memorialized and adopted by the District Judge in a later written order and involved a case where a privilege log was deemed inadequate and counsel representing Sunbeam had not reviewed the documents claimed privileged. It must also be noted that the remand was ordered before the NDWV amended its local rules to require specific information in a privilege log when claims of privilege are made.  the salient factors apparently relied on by the Judges of the Fourth Circuit were: the importance of claims of privilege; the fact that Sunbeam objected and provided a privilege log, albeit inadequate; and the willingness of this court to  default the assertion of substantive rights because of a procedural defect without providing opportunity to rectify that procedural defect.

In the instant case, Defendants timely objected asserting the privileges. LRCivP26.04(a)(2)(i)(A) and (B) require "[t]he attorney asserting the privilege **shall** identify the nature of the privilege" and is mandated to provide "[t]he following information ... in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (1) For documents: (a) the type of document, e.g., letter or memorandum; (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other; (2) For oral communications: (a) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (b) the date and place

of communication; and the general subject matter of the communication." (emphasis added). LRCivP26.04(a)(2)(iii) specifically mandates the above information "be furnished in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court."

There is no question that Defendants failed to comply with LRCivP26.04(a)(2)(i) and (iii). However, the local rule is silent with respect to the appropriate sanction, if any, to be applied for such a breach. Based on the advisory notes to the comparable federal rule, this Court concludes that the sanction of waiver is not mandatory. Instead it is permissive and within the discretion of the Court.

Four factors must be considered in determining what if any sanctions to impose: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Southern States Rack & Fixture, Inc. V. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) (quoting Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 155 F.3d. 500, 504 (4th Cir. 1998)). Sanctions are not appropriate "[w]hen it has been established that failure to comply has been due to inability, and not wilfulness, bad faith , or any fault of the non-complying party." Wilson v. Volkswagen of Am., 561 F.2d 494, 503 (4th Cir. 1997).

There is no evidence these Defendants acted in bad faith or wilfuly. In the instant case, no prejudice is suffered by the Small by Defendants' failure to contemporaneously file the LRCivP26.04(a)(2)(i) required information along with their objections or obtain a Court order permitting the same to be later filed. Any such failure to file was cured when Defendants filed their privilege logs. The responses with objections were initially filed 27 May 2011. Defendants filed their response to the motion to compel attaching a privilege log approximately a month later (30 June 2011) DE 249.

Each case must be decided on its own particular facts. While there is a need to deter non-compliance, waiver of the privilege asserted is not deemed the appropriate deterrence when, as in this case, there is no evidence of consistent misconduct or flagrant disregard for the rules.

For these reasons, this Court will not impose the sanction of waiver of the substantive claim because of a procedural default that did not result in harm.

D.    Sufficiency of Privilege Log

The Court  reviewed the privilege log submitted by Defendants on 30 June 2011.  The log includes the document #, the date of the document; the type of document (e.g. email, correspondence, letter, invoice, etc.), the general subject of the document (e.g. re: subpoena and deposition, re: note after retention of defense counsel, re: itemization of charges, etc.), the writer (from) and recipient (to), the privilege claimed, and the reason the document was created (legal representation.  The information provided is sufficient for a subpoena duces tecum.  This Court concludes the information provided is in compliance with that required under LRCivP26.04(a)(2)(i)(A) and (B).

E.    Appropriateness of Claim of Privilege - Work Product In Anticipation Of Litigation

Small contends the Defendants should not be permitted to shield the investigation of the accident conducted after 23 February 2009 by Crawford and Company through Mark P. Griffith because that investigation was part  of Defendants' insurer's duty to investigate and was performed in the ordinary course of business of CNA.  Defendants' insurer, CNA, argues that after it received initial reports of the seriousness of the accident and injuries on 20 February 2009 it anticipated litigation.  Therefore, in anticipation of that litigation, on 23 February 2009 it retained counsel familiar with large truck accident claims and advised the adjuster that the attorney would be directing the investigation.

"Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims files containing such documents usually cannot be

entitled to work product protection." <u>State Farm Fire and Cas. Co. v. Perrigan</u>, 102 F.R.D. 235, 237 (W.D.Va. 1984) and <u>Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.</u>, 123 F.R.D. 198, 202 (M.D.N.C. 1988).

"A document is prepared in the anticipation of litigation if 'the preparer faces an actual claim or potential claim following an actual event or series of events that reasonably could result in litigation.'" <u>Kidwiler v. Progressive Paloverde Insurance Co.</u>, 192 F.R.D. 536, 542 (N.D.W.Va. 2000) citing <u>National Union Fire Ins. Co. of Pittsburgh, PA. v. Murry Sheet Metal Co., Inc.</u>, 967 F.2d 980, 984 (4th Cir.1992).

There is no bright line rule. "There is no hard and fast rule to determine the point in time when a document is created under the ordinary course of business, and therefore not protected by the work product doctrine, or under the anticipation of litigation, and therefore not protected by the work product doctrine. Therefore, the Court adopts a 'case-by-case' approach to this issue, and considers the following factors relevant in this analysis: 'the nature of the documents, the nature of the litigation, the relationship between the parties, and any other fact peculiar to the case.' and , in addition, the involvement of counsel. Furthermore, the Court considers persuasive, in this analysis, the time when the document is created. <u>Kidwiler v. Progressive Paloverde Insurance Co.</u>, 192 F.R.D. 536, 542 (N.D.W.Va. 2000)(internal citations omitted).

"Normally, only after the insurance company makes a decision with respect to the claim, will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation. This is not to say that the threat of litigation may never arise at an earlier time. However, if the insurer argues it acted in anticipation of litigation before it formally denied the claim, it bears the burden of persuasion by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate." <u>Id.</u>, 542 FN 42.

In the instant case, it is clear from the record that no claim had been filed when CNA hired the

services of Mr. DeMasters on the morning of 23 February 2009, approximately three days following the accident. Mr. Small had not been interviewed by the claims adjuster, Mark Griffith. Since Mr. Small had not made a claim, there was no decision to be made to deny a claim. At best, on the date of the accident Mr. Griffith of Crawford and Company had visited the scene, took some pictures, made a drawing and sketch, discussed the accident with the state police officer who investigated it, discussed the accident with the WV DOT official who investigated the accident, saw that the driver of the 18 wheeled truck got to the hospital for his mandatory blood test, recommended obtaining photos taken by the police, recommended getting a copy of the police report, recommended getting a copy of the DOT report, recommended getting Ramsey's statement in Pennsylvania, and made a call back to the insurance company reporting what had been learned on 20 February. From the Court's review of Griffith's notes, it appears Griffith approached his work on 20 February as the beginning of a liability investigation.

It is also clear that sometime on the date of the accident, Senior Claims Examiner at CNA in the Major Case Unit John Donovan made the decision that "this matter would result in litigation against the insured." The basis for the decision was his understanding of the severity of the accident and severity of the injuries. There is little objective evidence that Mr. Donovan took into consideration in making the decision that litigation would result. In fact, if the language of his affidavit is to be believed when taken at face value, he "told the independent adjuster that [he] would immediately hire an attorney to represent the insureds, ..., to prepare the matter for litigation and to investigate the case." De 249 (affidavit of John Donovan p. 1, pp. 8).

Based on the foregoing analysis, the Court finds that Crawford and Company's Mark Griffith was retained by CNA on 20 February 2009 to conduct liability investigation of the accident of the same date. He did not close his investigative file until 1 May 2009.

The Court further finds that from the information provided in the Donovan affidavit, there are

insufficient facts from which this Court can conclude that it was objectively reasonable for Donovan to conclude claims would be made and that it was reasonable to anticipate litigation when he made the decision on February 20, 2009 to retain counsel. The fact that he retained counsel on the morning of February 23rd, is not dispositive. The Court further finds that Defendants have failed to carry their burden of persuasion "by presenting specific evidentiary proof of objective facts demonstrating a resolve to litigate." _Id._, 542 FN 42. The Court is concerned of sending a signal to those who have a duty to investigate that they can shield the results of that investigation from discovery by simply declaring their subjective belief that the matter would result in litigation and by hiring an attorney.

The facts presented do not change between 20 February 2009 when Donovan made the decision and the morning of 23 February 2009 when he executed the decision with the hiring of attorney DeMasters. The Court concludes that CNA's investigation from 20 February 2009 to 1 May 2009 was no more than it was required to do in the ordinary conduct of its business of a liability insurer whose insured was involved in an accident. The Court selects 1 May 2009 as the date of the adjuster's completion of the investigation because that is the date he is authorized in writing by CNA to close his file.

The Court therefore **GRANTS IN PART** Small's motion to compel responses to his discovery **DE 236** insofar as it seeks documents and information gathered and created by Griffith and Crawford and Company as a result of its investigation between 20 February 2009 and 1 May 2009.

With respect to the documents claimed privileged in the privilege log filed as part of DE 249 starting with CR 0017 dated 8 June 2011 through CNA 0912 (except for CNA 0912, CNA 0911, CNA 910, CNA 00909, CNA 00886-00888, CNA 00885, CNA 00875, CNA 00874, CNA 00699-702, CNA 00664-00698 between 2/20/2009 and 5/1/2009, CNA 00655-00663, CNA 00620-00654 between 2/20/2009 and 5/1/2009, CR 0031-0023, CR 00525-0028, CR 0023-0024, CR 0021-0022, CR 0020, CR 0019, CR 0018, and CR 0017) are legitimately claimed as work product and or attorney client

privileged and are excluded from discovery. The foregoing excepted documents were created during the period of the Griffith and Crawford and Company investigation and for the reasons herein set forth are not deemed protected by the work product or attorney client privilege. Defendants shall produce them within 14 days of the entry of this order.

In order to protect from an inadvertent Court ordered disclosure of claimed attorney client privileged materials and or claimed opinion work product protected materials contained in the documents identified in the privilege log filed as part of DE 249 and herein ordered to be produced in discovery[6], Defendants may appear before the Court on 24 August 2011 at 2:30 p.m. and present copies of those documents they claim as protected for *in camera* review. The Court will review the same[7] in the presence of counsel for the Defendants and will make decisions on exclusions or redactions permitted or denied.

MOTION FOR <em>IN CAMERA</em> REVIEW

Documents provided for *in camera* review in association with the Motion to Quash the Crawford deposition DE 252, DE 237 and DE 238 were reviewed by the Court. Accordingly the Motion for *in camera* review **DE 238** is **GRANTED**.

Based on the Court's *in camera review,* those documents bearing Cr 0015, 16,17, 18,19, 20, 21, 22, 23, 24, 29, 30, 31, 32 and 33 are excluded from production as billings, emails relative to a subpoena being issued, emails relative reopening of the file to respond to the subpoena and emails relative to billings and payment all of which were created post closing of the investigation file or

---

[6] CNA 0912, CNA 0911, CNA 910, CNA 00909, CNA 00886-00888, CNA 00885, CNA 00875, CNA 00874, CNA 00699-702, CNA 00664-00698 between 2/20/2009 and 5/1/2009, CNA 00655-00663, CNA 00620-00654 between 2/20/2009 and 5/1/2009, CR 0031-0023, CR 00525-0028, CR 0023-0024, CR 0021-0022, CR 0020, CR 0019, CR 0018, and CR 0017.

[7] CNA 0912, CNA 0911, CNA 910, CNA 00909, CNA 00886-00888, CNA 00885, CNA 00875, CNA 00874, CNA 00699-702, CNA 00664-00698 between 2/20/2009 and 5/1/2009, CNA 00655-00663, CNA 00620-00654 between 2/20/2009 and 5/1/2009, CR 0031-0023, CR 00525-0028, CR 0023-0024, CR 0021-0022, CR 0020, CR 0019, CR 0018, and CR 0017.

unrelated to the substantive results of the investigation being conducted.  All other documents provided for *in camera* review in association with the Motion to Quash the Crawford deposition not specifically excluded by this Order shall be disclosed to Plaintiff in a supplemental disclosure filed within 14 days of the entry of this Order.

MOTION TO QUASH DEPOSITION OF MARK GRIFFITH

The motion to quash the deposition of Mark Griffith **DE237 IS GRANTED IN PART.**  No inquiries shall be permitted  with respect to documents identified as Cr 0015, 16, 17, 18,19, 20, 21, 22, 23, 24, 29, 30, 31, 32 and 33.   The motion to quash the deposition of Mark Griffith is Denied with respect to  documents and information gathered and created by Griffith and Crawford and Company as a result of its investigation between 20 February  2009 and 1 May 2009 not herein specifically excluded.

Claims for costs are **DENIED.**

**For docket entry purposes, DE 238 is GRANTED; DE 237 is GRANTED IN PART AND DENIED IN PART; and DE 236 is GRANTED IN PART AND DENIED IN PART.**

The clerk is directed to remove DE 236, 237 and 238 from the docket of motions actively pending before the court.

It is so **ORDERED**.

The Clerk of the United States Court for the Northern District of West Virginia is directed to provide a copy of this order to all counsel of record.

DATED: 17 August 2011

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE