IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TOBBY LYNN SMALL,**

**Plaintiff,**

**VS.**                                              **Case No 1:10cv121**
                                                     **The Honorable Irene M.  Keeley**

**JAMES R.  RAMSEY, et al.,**

**Defendants.**

<u>**MEMORANDUM OPINION/ORDER**</u>

**I.  Procedural History**

The within civil action was instituted and then removed to this Court on August 5, 2010.  It is a personal injury action arising out of February 2009 accident.  Toby Lynn Small alleges that on 20 February 2009 he slid on an icy bridge along the Southbound lane of I-79 near mile marker 96.  He either slid or drove  into the median.  He further alleges he got out of his vehicle to survey any damage to his vehicle.  As Small was standing outside his vehicle, a vehicle driven by James R. Ramsey slid on ice and in front of a 18 wheeled truck.  The 18 wheeled truck ultimately crossed from the slow lane into the passing lane and into the median where it struck a high tension median cable barrier.  Some portion of the high tension median barrier system contacted Small.  Small claims he was seriously injured.

The District Judge entered an Agreed Order Granting Bifurcation April 5, 2011[DE 183].  The order bifurcated bad faith and UTPA (medical expense ) Count IV claims of Small against his insurer, State Farm, and its personnel from the  pending liability claims against Ramsey, Kelley Wayne, Trinity, McNeal, Amerigas, Snyder & Associates.  Some of these Defendants are insured by Nationwide.

Small moved for a Protective Order on January 14, 2011 [DE 90] and later filed his version

of a Protective Order [DE 102].  Small and Intervenor Nationwide became embroiled in a dispute over Nationwide's standing to object to the proposed protective order [DE 109], to the timeliness of its reply [DE 118] to Small's response [DE 108] to its motion to intervene [DE 88], and the terms and provisions of a protective order during the late spring of 2011 [DE 248].  The District Judge gave Small and Nationwide time to work out their differences.

State Farm filed its objection to the proposed protective order in the summer of 2011 [DE 271].

August 11, 2011 Small filed his notice of 30(b)(6) deposition and production of documents demand on Nationwide. [DE 279].

August 12, 2011 Small filed his notice of 30(b)(6) deposition and production of documents demand on State Farm [DE 280].

August 12, 2011 the District Judge entered an order directing Small, Nationwide and State Farm to continue their negotiations and file a joint status report or agreed protective order by September 12, 2011 [DE 281].

After the District Judge's order of August 12, 2011, Small filed his Objection and Motion to Strike Defendant State Farm's Response In Opposition To Plaintiff's Motion For Protective Order [DE 282].  This motion was referred by the District Judge to the Magistrate Judge on September 20, 2011 [DE 317].

August 24, 2011 Small filed his motion for extension of time to file joint status report regarding protective order [DE 290].

August 25, 2011 the District Judge entered an order granting Small's motion, extending time to file the joint status report to October 7, 2012[1], and directed Small, the intervenor, Nationwide...

_____

[1]In all likelihood, the year is a scrivener's error and the real date is October 7, 2011.

and the defendant, State Farm Mutual Auto Ins. Co., to continue their negotiations toward a protective order.  [DE 294].  The order has not been changed or challenged.

August 26, 2011 State Farm filed its response to Small's objection and motion to strike contending the matter of State Farm's participation in the dispute over the protective order has been rendered moot by the District Judge's order recognizing its interest in the matter. [DE 297].

The motion for protective order issue and Small's objection to State Farm's participation in the protective order issue [DE 282] had not been referred to the undersigned pursuant to 28 USC 636(b)(1) before the hearing on the issues raised by DE 282, 307 and 311.

The Magistrate Judge had no jurisdiction over the issues raised by the protective order or the objection to State Farm's participation until those matters were referred to him.

September 6, 2011 State Farm moved to quash the deposition and document production demand [DE 307].

September 7, 2011 State Farm's motion to quash was referred to the Magistrate Judge by the District Judge [DE 308].

September 13, 2011 Nationwide moved to quash the deposition and document production demand [DE 311].

September 13, 2011 Nationwide's motion to quash was referred to the Magistrate Judge by the District Judge [DE 312].

Magistrate Judge temporarily stayed deposition and production requests scheduled for September 14, 2011 by order dated September 13, 2011 [DE 313].

September 19, 2011 Small filed his responses to the motions to quash Nationwide [DE 314] and State Farm [DE 315].

By order dated September 26, 2011 [DE 324] the District Judge referred the within civil

action to the undersigned to conduct hearings and rule on all non-dispositive motions.

By order dated September 30, 2011 [DE 325] the Court directed the parties to file their respective versions of a protective order by October 5, 2011 and appear telephonically before the Court on October 7, 2011 at 4:00 pm for hearing.  The parties filed their respective versions of the protective order as ordered on October 5, 2011. [DE 328, 329, and 330].  By separate order dated October 6, 2011 the Court resolved the apparent quandary caused by the prior Order's failure to designate a specific attorney to be responsible for placing the call joining all relevant counsel with the Court for the telephonic hearing. [DE 331].

On October 7, 2011 came Small, Nationwide, and State Farm by counsel as ordered.  The parties had failed to reach agreement.

This being a non-dispositive pre-trial matter pending before the Court, pursuant to 28 U.S.C. §636(b)(1)(A) the matter was taken under consideration prior to the entry of this Memorandum Opinion/Order.

## II. Issues Presented

1.  What standing, if any does State Farm have with respect to the issues of a protective order given that the first party UTPA and Bad Faith claims against it have been bifurcated? [DE 271, 281, 282, 290, 294 and 297].

2.  Should Small be permitted to conduct discovery of the methods and practices of Nationwide and State Farm in maintaining medical records that come to their possession incident to litigation? [DE 279, 280, 307, 311, 314, and 315].

3.  Does Small show good cause for the entry of a protective order?

4.  What, if any, terms of protection are reasonably necessary and appropriate for imposition on the use,  maintenance, storage, and protection of the medical records of Tony Lynn Small? [DE

248].

### III.  Discussion

### A.

### Standing of State Farm and Nationwide

### DE 282, 109 and 118 DENIED

The prior orders of the District Judge [DE 281 and 294] acknowledged State Farm as a party with an interest in the dispute over a protective order for the Small medical records.  The parties, including Small, conceded judicial economy and economies to the parties were served by including State Farm in the arguments and decision.  The same is true of Nationwide.  Further, Small argued that State Farm and Nationwide hold similar positions with respect to many of their arguments for the Court not ordering removal and surrender of the Small medical records produced in discovery at some point following the conclusion of the subject case.  Nationwide was granted intervenor status by order dated June 28, 2011 [DE 248] which mooted DE 109 and DE 118.  Therefore those motions [DE 109 and 118] are subject to denial.  Moreover, it makes no logical sense to settle the dispute of the protective order with one insurance company, Nationwide, without considering the common arguments raised by another insurance company, State Farm, with respect to the protective order.  Accordingly, in this action, the Court concludes State Farm has standing to be heard relative to the issues it holds in common with Nationwide with regard to the terms and conditions of any protective order entered relative to Small's medical records.

However, given that the claims against State Farm are bifurcated and State Farm does not have an immediate need for Small's medical records, the Court need not decide and does not decide at this time the contractual claims State Farm raises in objection to a protective order or decide what terms of a protective order, if any, would be appropriately imposed on any contractual disclosure of

Small's medical records to State Farm.

Accordingly, Small's Objection  and Motion to Strike Defendant State Farm's Response In Opposition To Plaintiff's Motion For Protective Order [DE 282] is **DENIED.**  Small's Motion to strike Nationwide's Objections To Small's Proposed Protective Order [DE 109] is **DENIED AS MOOT.**  Plaintiff's Motion To Strike Reply of Nationwide [DE 118] is **DENIED AS MOOT**.

**B.**

**Discovery**

**DE 307 and 311 GRANTED**

At this time the Court does not require discovery of the type and depth sought by Small in his notice of 30(b) depositions and discovery document production requests served on Nationwide and State Farm..  Some of the information sought through discovery is proprietary in nature and permitting inquiry would prejudice the insurance carrier far above what probative value the information would have to the Court in determining the provisions of any protective order.   Small does not waive his claim to the discovery, but during the argument conceded the decision at this juncture in time was primarily a question of law not enhanced by the information that may be gleaned from the requested discovery.

State Farm's  Objection and Motion For Protective Order [DE 307] is **GRANTED** and the subpoena duces tecum and notice of 30(b)(6) deposition are **QUASHED.**

Nationwide's Objection and Motion For Protective Order [DE 311] is **GRANTED** and the subpoena duces tecum and notice of 30(b)(6) deposition are **QUASHED.**

**C.**

**Good Cause**

Burden of Proof - Protective Order

F.R.Civ.P. 26(c) provides in pertinent part: "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending .... The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, ***for good cause***, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following: ...." [emphasis added].

It is settled that "[i]n order to establish good cause, a proponent may not rely upon "stereotyped and conclusory statements," but must present a "particular and specific demonstration of fact," as to why a protective order should issue. Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2035 (1994) (citations omitted) [hereinafter Wright & Miller]; 10 Fed. Proc., L.Ed. § 26:181 (last updated June 2006) (citations omitted). *See also Merit Industries, Inc. v. Feuer,* 201 F.R.D. 382, 384-385 (E.D.Pa.2001) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing."); *Medlin v. Andrew,* 113 F.R.D. 650, 653 (M.D.N.C.1987) (burden of demonstrating good cause is a heavy one) (citation omitted). He must demonstrate that the discovery sought lacks relevance "to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs any need for the information." *UAI Technology, Inc. v. Valutech, Inc.,* 122 F.R.D. 188, 191 (M.D.N.C.1988) (defining relevant information broadly as any matter that bears on or could bear on "any issue that is or may be in the case") (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)); 10 Fed. Proc., L.Ed. § 26:191 (last updated June 2006) (citations omitted)." Baron Financial Corp. V. Natanzon, 240 F.R.D. 200, 202 (D. Md 2006.

"Although its good cause requirement creates a rather high hurdle for proponents, Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what

degree of protection is required." *Furlow v. U.S.,* 55 F.Supp.2d 360, 366 (D.Md.1999) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)); Wright & Miller § 2036 (citations omitted). Nonetheless, protective orders "should be sparingly used and cautiously granted." *Medlin,* 113 F.R.D. at 652. This is especially the case with requests to stay depositions, the majority of which courts deny. *Id.* (citations omitted). *See also* Wright & Miller § 2037 (citing in part *Motsinger v. Flynt,* 119 F.R.D. 373, 378 (M.D.N.C.1988) ("Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition.")); 10 Fed. Proc., L.Ed. § 26:191 (an "order to vacate a notice of taking a deposition is generally regarded by the courts as both unusual and unfavored"). A court may, within its discretion, issue a Rule 26(c) protective order "to stay discovery pending determination of a dispositive motion[.]" *203 *Tilley v. U.S.,* 270 F.Supp.2d 731, 734 (M.D.N.C.2003); 2 Discovery Proceedings in Federal Court § 20:4 (3d ed., last updated Aug. 2006) (citations omitted). However, it should generally not do so if discovery is needed in defense of the motion, *Tilley,* 270 F.Supp.2d at 734 (citations omitted), or if "resolution of the motion will not dispose of the entire case." *Simpson v. Specialty Retail Concepts, Inc.,* 121 F.R.D. 261, 263 (M.D.N.C.1988) (citing *Lugo v. Alvarado,* 819 F.2d 5 (1st Cir.1987)); *Chavous v. District of Columbia Financial Responsibility and Management Assistance Authority,* 201 F.R.D. 1, 3 (D.D.C.2001) (quoting *Keystone Coke Co. v. Pasquale,* No. CIV. A. 97-6074, 1999 WL 46622, at *1 (E.D.Pa.1999)).  *Id.*

The undersigned finds that from a totality of the facts and presentations before the Court, Small has presented specific facts and articulated reasoning establishing good cause for the Court to enter a protective order.  Medlin, *supra.*   First, the undersigned herein finds that Small has a privacy interest in his medical records that he has a right to protect. [Nationwide: Hrg. Tr. p. 4, l. 12;

State Farm: p. 4, l. 14- p. 5, l. 7[2]; p. 39, l. 19-23].  Second, the undersigned finds it is clear that State

Farm and to a lesser extent Nationwide intend to distribute any medical records and the information

supplied by Small in discovery to third parties within their own organizations outside of those

necessarily involved in evaluation and resolution of the claims in this action and to such other

organizations such as ISO and NICB (National Insurance Crime Bureau).  [Hrg. Tr. p. 9[3]-19[4];  Hrg.

Tr. P. 19-25; Hrg. Tr. p. 29-41;  Hrg. Tr. p. 65-68  Zubalake type orders; and Hrg. Tr. p. 78, l. 19-

86].  This would remove from Small any practical control he may have with respect to those records,

who sees them and to what use they may put them [Hrg. Tr. p. 46, l. 13-19; p.51 - 56].  Third, the

undersigned is not banning all use of the medical records by State Farm and Nationwide.  Motsinger,

*supra*.[5]   The undersigned is merely limiting the use to satisfying the requirements of law imposed

---

[2]State Farm takes the position Small's rights to protect his medical records are
"equivocal" in the sense they are limited by: 1) the extent Small has put his medical condition in
question; 2) Small's insurance contract with State Farm requiring him to execute a medical
authorization "through which he would provide necessary medical records in support of a claim";
and 3) "adequate protection of his medical records already is provided by existing law with
respect to their production to the insurance companies because of the regulation of the insurance
companies by statute and regulation."

[3]Defense counsel in the civil case cannot bind the insurer because he or she does not
represent the insurer.

[4]The concern expressed by State Farm and Nationwide in footnote 3 is alleviated by State
Farm and Nationwide conceding records provided by Small in discovery in this case and not
otherwise disclosed may be protected against "unauthorized disclosure" by defense counsel who
receive them directly and all others who may receive them indirectly, including insurers, by court
order.  The issue is what is meant by "unauthorized disclosure."  State Farm and Nationwide
argue they are mandated by various state laws [statutes and regulations] to make disclosures to
third parties.

[5]Nationwide opines it is entitled to retain Small's medical records for six or seven years
from a yet unresolved start date[as an accommodation in this case]. [Hrg. Tr. p. 61, l. 7-11 and p.
87, l. 7-11].  State Farm does not know how long it would be entitled to retain Small's medical
records. [Hrg. Tr. p. 61, l. 13-19].  In the end, State Farm argues the need to keep Small's
medical records could be perpetual - "lifetime." [Hrg. Tr. 37, l. 24]..  Small opines the period
recognized in Bedell II is more than adequate. [Hrg. Tr. p. 61-62]

on State Farm and Nationwide by West Virginia and their use of the information in the defense of claims arising in the subject litigation. Fourth, the undersigned finds herein that Small does not lose all control over the privacy of his non-public medical records merely because he claims to have been injured and is embroiled in litigation of the accident and his alleged injuries.

### D.

### Protective Order

a.      There are certain "Uncontested Findings and Conclusions of Fact" which underlie the development of any protective order. Based on the record prior to the hearing of October 7, 2011 the Court prepared and submitted tentative conclusions to counsel and heard argument with respect to the same. Accordingly, the Court finds the following findings of fact and conclusions are not disputed by the parties:

1.      Small cannot prohibit discovery of his medical records once he has placed his medical condition at issue by filing a lawsuit claiming personal injuries. [Hrg. Tr. p. 7].

2.      Certain of Small's medical records prior to the accident in question in this litigation may be relevant for discovery purposes. [Hrg. Tr. p. 7-8].

3.      Small's medical records for injuries he claims to have sustained as a result of the accident in question in this litigation are relevant for discovery purposes. [Hrg. Tr. p. 8-9].

4.      The State of West Virginia has required the Insurance Commissioner's office to conduct an examination of all insurance companies operating in West Virginia at least once every five years. W.Va.Code §33-2-9( c ). [Hrg. Tr. p. 25].

5.      The Insurance Commissioner for West Virginia "has promulgated a legislative rule that, among other things, establishes '[s]tandards for retention of records and documents that the commissioner may require to be produced by an insurer in connection with any analysis,

review or examination provided for in W.Va.Code §33-2-9.'" [Hrg. Tr. p. 26].

6.    One of those legislative rules requires insurers licensed and who do business in the State of West Virginia to maintain for each insurance claim filed "[f]or property and casualty: the file or files containing the notice of claim, claim forms, proof of loss or other form of claim submission, settlement demands, accident reports, police reports, adjustors' logs, claim investigation documentation, inspection reports, supporting bills, estimates and valuation worksheets, medical records, correspondence to and from insureds and claimants or their representatives, notes, contracts...." W.Va.C.S.R. §114-15-4.4(a)(1). [Hrg. Tr. p. 26-27].

7.    The period of time the records must be maintained for purposes of the WV statute is the lesser of :

"The current calendar year plus five (5) calendar years;

From the closing date of the period of review for the most recent examination by the commissioner; or

A period otherwise specified by statute as the examination cycle for the insurer." *Id.* §114-15-4.2(b). [Hrg. Tr. p. 27-28].

8.    State Farm does business in West Virginia.

9.    Nationwide does business in West Virginia.

10.    The West Virginia Supreme Court of Appeals in <u>State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell</u>, 226 W.Va. 138, 146 (2010) [Bedell I] held "because this is a recurring issue[6], the Court now explicitly holds that a court may not issue a protective order directing an insurance company to return or destroy a claimant's medical records prior to the time period

_____

[6]First and third party claimants involved in litigation concerning their claims had requested court orders directing destruction or return of medical documentation by the insurer at the conclusion of the litigation.

set forth by the Insurance Commissioner of West Virginia."

11.  State Farm does not have "knowledge or a reasonable belief that fraud or another crime related to the business of insurance is being, will be, or has been committed" by Small.

12.  Nationwide does not have "knowledge or a reasonable belief that fraud or another crime related to the business of insurance is being, will be, or has been committed" by Small.

13.  In the absence of agreement[7] or Court Order, the parties' ability to address and resolve the real issues of liability and damages, issues at the heart of Small's claims filed and pending before this Court could be unreasonably sidelined, delayed and obscured.

14.  State Farm has no need for medical information relevant to the bad faith and UTPA claims "until such times as those claims [become] viable, if and when they ever do...." [R. 19: 3-9].

b.  Contentions

**Small**

i.  Small has a right to protect the confidentiality of his medical records. [R. 4:6].

a.  WV Case law recognizes a public policy to grant protection to the medical records of a person even when necessary to produce in discovery. [R 6:10-17].

b.  HIPPA expresses a federal public policy that medical records be used only for the proceeding and be returned and not maintained when the proceeding is done. [R. 6:19-23].

ii.  "Defense counsel and insurers receiving disclosure of medical records have a duty to protect the medical records disclosed by Small from unauthorized disclosure until such time as they are introduced in evidence in any trial of this matter and thereby are made a part of the public record" is too narrow and should be expanded to include anyone receiving the medical records. [R.14-15: 17-9].

a.  Reporting to medicare and medicaid inapplicable in this case. There are no such claims. In addition, upon notice to CMS under Secondary

---

[7]Near the conclusion of the hearing, the Court was advised by Nationwide, that an interim arrangement between it and Small had been reached to permit a representative of Nationwide to review the medical records as part of a process of evaluating Small's claims and in the hope of moving the liability case forward.

Payer Act notification, such claims would be identified and/or cleared. [R. 15: 10-25].

iii.   In order to effectively represent a client, defense counsel must be able to disclose Small's medical records to the client, the client's insurer's, disclosed and undisclosed expert witnesses, and their respective staffs. However, Small would limit dissemination to the attorneys and their staffs, but not the universe of the insurance carrier which he characterizes as "unreasonable dissemination." To prevent that Small would rely on language of the order limiting use and dissemination to those involved in the evaluation process. [R. 20-24: 8-25].

iv.   W.Va.Code §33-41-5 does not mandate disclosure of Small's medical records unless the insurance company has "knowledge or a reasonable belief that fraud or another crime related to the business of insurance is being, will be, or has been committed."

   a.   Bedell II determined the time limit that medical records could be kept.

   •   The court should give comity or full faith and credit to Bedell II [R. 42-43: 7-3].

   •   The records are Smalls. They are not State Farm's or Nationwide's medical records and the insurers have no right to them in perpetuity. [R. 43: 4-25].

   b.   Illinois law is not binding on West Virginia or vice versa. [R. 44: 3-24].

   c.   The West Virginia Insurance Commissioner's letter is not law. [R. 45].

   d.   There is no authority to give Small's records to ISO or NICB:

   •   Insurance Commissioner has no prosecutorial or subpoena power. [R. 45-46].

   •   Insurance Commissioner must use local prosecutor to pursue fraud. [R. 45-46].

**Nationwide**

i.   Small has a right to protect the confidentiality of his medical records. [R. 4: 12].

   a.   There is an entire body of law that regulates the insurance carrier without the necessity of a separate medical protective order. [R. 1020-25].

   b.   There are terms of a protective order that are inconsistent with the existing regulations including the requirement that defense counsel make representations and assurances that purport to bind the insurance company he does not represent. [R. 11:1-6].

ii.   Defense counsel, which respect to the people they control, have a duty to protect the medical records disclosed by Small from unauthorized disclosure

until such time as they are introduced in evidence in any trial of this matter and thereby are made a part of the public record. [R. 9: 13-17].

    a.    Defense counsel does not bind the insurance carrier they do not represent. [R. 9-10: 17-8].

iii.    In order to effectively represent a client, defense counsel must be able to disclose Small's medical records to the client, the client's insurers, disclosed and undisclosed expert witnesses, their respective staffs and insurance defense counsel must be able to share with the insurer and vice versa. [R.19: 17-24].

iv.    W.Va.Code §33-41-5 does not mandate disclosure of Small's medical records unless the insurance company has "knowledge or a reasonable belief that fraud or another crime related to the business of insurance is being, will be, or has been committed." [R. 29: 14].

    a.    While Nationwide agrees the foregoing is a correct statement, it also agrees with State Farm's position stated below. [R. 41]

    b.    The reporting requirements of insurance commissioners or the insurance carrier's domestic regulators require access to information within the virtual walls of the insurance companies for rates, underwriting, and other purposes. [R. 41: 13-23].

**State Farm**

i.    Small does not have an absolute right to protect the confidentiality of his medical records.

    a.    By putting his medical condition in issue, Small has limited the extent he can properly insist on confidentiality of his medical records. [R. 4:17-21].

    b.    Small is an insured of State Farm and contractually agreed to sign a medical authorization through which he agreed to provide necessary medical records in support of a claim. [R. 4: 22-25].

        •    Sharing of medical information is governed by the contract outside of the Court process [R. 17: 12-17].

        •    Improper to alter the contract without consent of both parties: insurer and insured. [R. 17:17-19].

        •    State Farm got some medical bills from Small as part of med pay claim but has not yet received all medical records. [R. 18-19].

    c.    State Farm is an insurance company and as such is regulated by federal and state laws that addresses use, disclosure, and retention of nonpublic personal medical information. [R. 5:3-7 and 23-25].

        •    New York Statutes Title 11, Chapter 10, Sec. 243.2.

ii.    A protective order requiring Defense counsel to protect the medical records disclosed by Small from unauthorized disclosure until such time as they are introduced in evidence in any trial of this matter and thereby are made a part

of the public record is superfluous because of state and federal regulations that govern with certain limited exceptions the dissemination of nonpublic personal information. [R. 11 20-25].

      a.    Defense counsel's duty to protect medical records only extends to trial. [R. 121-14].

      b.    Insurers are under a duty to report certain information that is contained in a confidential medical record whether the records have been made public by introduction at trial or not. [R. 12: 20-25].[8]

iii.    In order to effectively represent a client, defense counsel must be able to disclose Small's medical records to the client, the client's insurer's, disclosed and undisclosed expert witnesses, and their respective staffs. [R. 20: 4-6].

iv.    Insurers, including State Farm and Nationwide, are governed by other state laws and regulations that govern their obligations to retain documents and

---

[8]Post hearing State Farm filed a Supplemental Memorandum [DE 338] with attachments: Memorandum of Understanding and Affidavit of Nestor Guitierrez. Small objected to the filing in a response filed as DE 342. The Court reviewed State Farm's supplemental memorandum. Based on the Court's review, the following is noted:

1.    The Illiniois Department of Insurance and the NICB (National Insurance Crime Bureau) entered in to a Memorandum of Understanding in January 2004 by which each agreed to cooperate in establishing a repository and the creation of a questionable claims database for te State of Illinois as part of an insurance fraud program in accord with Illinois Public Act 92-0233 (January 1, 2002) requiring insurance companies, insurance support organizations and self-insured entities to report questionable insurance claims and application or premium fraud to the entity designed by the Director of the Illinois Department of Insurance (entity selected by DOI is NICB). [DE 338-1, p 1-4].

2.    While the MOU enumerates the responsibilities of NICB and NICB agrees to indemnify and hold harmless DOI against claims of tort or contract resulting from NICB's negligence or misuse of the data base, DOI "assumes no liability for the actions of NICB and is unable to indemnify or hold NICB ... harmless for claims based on this Agreement or use of NICB provided services" and "[t]he state's liability for damages is expressly limited by and subject to the provisions of the Illinois Court of Claims Act ... and to the availability of suitable appropriations." *Id.*

3.    The MOU does not identify what information would be shared except that it would relate to questionable insurance claims and application or premium fraud.

Given Small's objections from a due process opportunity to be heard standpoint, the fact that the record was closed, the lack of detail concerning the information which would be shared, the fact that no fraud is suspected of Small, the lack and limit of available recourse to Small should the DOI and / or NICB improperly disclose his personal medical information, and the lack of necessity to address the issues raised by State Farm's Supplement without further proceedings, the Court declined to consider the supplemental filing. The Court further found the averrments of Gutierrez are primarily a summarization of the arguments made by Counsel for State Farm during the hearing and need not be further considered for the reasons herein stated.

report fraud.   Therefore the statement: W.Va.Code §33-41-5 does not mandate disclosure of Small's medical records unless the insurance company has "knowledge or a reasonable belief that fraud or another crime related to the business of insurance is being, will be, or has been committed." while correct on its face is too limited. [R. 29: 17-25].

a.   WV Insurance Commissioner Informational Letter 172 speaks to Record retention as an important tool in detecting fraudulent insurance claims. [R. 30].

b.   Fraud is broader than an individual claimant and may encompass providers and parties other than claimants. [R. 31].

c.   State Farm argues West Virginia statute includes in its fraud components a record retention requirement. [R. 31: 16-19].

d.   Illinois Department of Insurance has an interest in WV claims if they are:
  •   handled interstate by an Illinois claims representative or
  •   impact the financial condition of State Farm. [R. 31: 20-25].

e.   Illinois requires insurers to preserve records for:
  •   market conduct,
  •   fraud claims, and
  •   reporting of questionable claims. [R. 32:1-6].

f.   A protective order would "completely destroy the ability to detect fraud in the manner that is followed by insurance companies and is expected by insurance regulators today." [R. 33:7-24].

g.   Illinois requires State Farm to file an anti-fraud plan which plan requires State Farm to report questionable claims information to the NICB - National Insurance Crime Bureau. [R. 38].

h.   State Farm's payment of medical claims to providers is computerized and, with payments electronically made, requires that certain medical information be provided from the complex system of computer files so the payee knows the individual for whom is it is receiving payment. [R.37].

i.   State Farm concludes it requires retention of medical files for a lifetime. [R. 37: 22-24].

v.   While the National Insurance Crime Bureau is a voluntary membership organization and insurance company participation in the same is not mandated by any federal or West Virginia regulation or statute, disclosure of confidential medical records to this voluntary organization is directly or indirectly required by the West Virginia Insurance Commissioner and other states' insurance regulators.

vi.   While ISO is a voluntary membership organization and insurance company participation in the same is not mandated by any federal or West Virginia regulation or statute, disclosure of confidential medical records to this voluntary organization is directly or indirectly required  by the West Virginia

Insurance Commissioner and other states' insurance regulators.

c.      Right To Privacy In Medical Records

West Virginia recognizes the individual's right to privacy with respect to his or her medical records. "There is no question that disclosure would cause an invasion of privacy. An individual's medical records are classically a private interest." Child Protection Group v. Cline, 177 W.Va. 29, 350 S.E.2d 541 (W.Va.,1986). Although it is not completely clear how this came to be, it appears to be a common law recognition which grew out of a line of cases culminating with: Crump v. Beckley Newspapers, Inc., 173 W.Va. 699, 320 S.E.2d 70 (1983). The West Virginia Court therein held: "Under West Virginia law, there are four types of invasion of privacy, any one of which may be the basis of a cause of action. "An 'invasion of privacy' includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. pt. 8.

In the instant case Nationwide admits that Small has a right to privacy with respect to his medical records. State Farm also admits that Small has a privacy interest in his medical records. Nationwide and State Farm argue that the filing of Small's law suit and claims imposes limits on any privacy right Small has in the medical records. There appears to be no dispute that if Small does not introduce his medical records in evidence during a public trial, there is some basis for him to retain privacy interest in the records even though the records may be offered up in discovery and used in reaching settlements. However, State Farm and to a lesser degree, Nationwide, argue there is no need for a protective order from the Court because they, as insurance carriers, are constrained by a

"patchwork of laws and regulations[9]" as to how and to whom they may divulge the records or portions thereof.

From the following review the Court has concluded the patchwork of laws and regulations are not adequate to protect the privacy interest of the individual in his medical records recognized by the West Virginia Supreme Court of Appeals.

Under the West Virginia regulations as construed by the West Virginia Supreme Court of appeals, insurers are prohibited from disclosing non-public personal health information without authorization by the individual.  Notwithstanding this clear pronouncement from the Court, State Farm and Nationwide argue Small's right to redress in the courts is adequate should the insurer(s) violate his privacy by disclosing his records.

It is true that West Virginia provides a path of redress for Small and others similarly situate. *See also* Morris v. Consolidation Coal Co., 191 W.Va. 426, 446 S.E.2d 648 (1993) (recognizing cause of action against third-party who wrongfully induces physician to disclose patient's medical records); Allen v. Smith, 179 W.Va. 360, 368 S.E.2d 924 (1988) (allowing patient to maintain cause of action against psychiatrist for unauthorized release of patient's medical records pursuant to valid subpoena).  The cases provide resolutions once a wrongful disclosure has been discovered.  Both State Farm and Nationwide are at a loss to explain to this Court how Small would know of an

---

[9]As noted by the Court in State of West Virginia ex rel, State Farm Mutual Automobile Insurance Company v. Bedell [Bedell I], 226 W.VA. 138, 146, 697 S.E.2d 730, 738 (2010): "To further protect the confidentiality of an insured's medical records, the Insurance Commissioner has promulgated a legislative rule, W.Va. C.S.R. sec. 114-57-15 (2002), based on the model privacy rules of the National Association of Insurance Commissioners, which are patterned after the federal Gramm-Leach-Bliley Act, 15 U.S.C. sec. 6801, *et seq*.  Among other things, this rule prohibits insurers from disclosing 'nonpublic personal health information' without authorization by the individual.  W.Va. C.S.R. sec. 114-57-15.1.  Thus, insurers operating in West Virginia are required to prevent the unauthorized disclosure of confidential medical records contained in claim files, whether those files are stored electronically or in paper format."

unauthorized disclosure should one occur.  Small seeks to prevent the unauthorized disclosure thereby avoiding being in the position of  "closing the door after all the horses have run out."  Small vehemently objects to yet another claim against an insurance company in the event of an unauthorized disclosure of his medical records.

The dilemma presented in the instant case is: (1) Small won't surrender his privacy in his medical records to State Farm and Nationwide without a protective order; (2) State Farm and Nationwide won't sign Small's protective order to get his medical records for their use in evaluating the case; and (4) absent some accommodation, there is no discovery, no adequate evaluation, no settlement, and no adequate preparation for trial.

This is strikingly similar to the "Catch - 22" facing the parties in State of West Virginia ex rel State Farm Mutual Automobile Insurance Company v. Bedell [Bedell I], 226 W.VA. 138, 145, 697 S.E.2d 730, 737 (2010): "Counsel for Mr. Thomas's Estate cannot pursue such a settlement, however, without discussing the Blank's medical records with State Farm because, as the insurer, State Farm must agree to any settlement paid from Mr. Thomas's insurance policy.  Accordingly, counsel for the Estate is caught in the untenable position of needing to disclose the medical records to State Farm in order to facilitate a settlement, but being unable to do so because, under the protective order, she cannot certify that State Farm would return or destroy the records upon the conclusion of the case.  Consequently, the protective order similarly prevents Mr. Thomas's Estate from being able to prepare for trial or take the steps necessary to reach a settlement in the case."

For purposes of the decision in this case, the Court concludes that under West Virginia common law Small has a right of privacy in his non-public medical records.  It goes without saying that none of Small's "medical records will become public unless [he] consents to their dissemination or until they are introduced at trial."  *Id.,* 148, 740.

Moreover, for purposes of this order, medical records and medical information are synonymous.  State ex rel. State Farm Mut. Auto. Ins. Col v. Bedell, [Bedell II] 2011 WL 1486100 W.Va., 2011.

d.      Impact of HIPPA

To the extent Small argues that HIPPA gives him a right to privacy in his non-public medical records as against his first party liability insurer or a third party liability insurer, this Court finds that argument to be without merit.

This Court finds no language extending the provisions of the HIPPA statutes [42 U.S.C. §1320 et seq. including §1320c-9 and 1320d-6] and regulations [45 C.F.R. §160.103 et seq.] to liability insurers such as State Farm and Nationwide.

To the extent State Farm and/or Nationwide argue they have a duty to directly or indirectly supply an individual's health care information gathered in a liability case to state or federal authorities investigating criminal activity, including fraud, Executive Order 13181 signed by President Clinton on December 20, 2000 generally restricts investigative and prosecutorial authorities' use of personal health care information gathered by health oversight authorities in the pursuit of individual criminal investigation to those specific instances where a judicial officer has determined "whether there is good cause by weighing the public interest and the need for disclosure against the potential for injury to the patient, to the physician patient relationship, and to the treatment services."  No such judicial balancing has taken place with respect to Small's medical records.  Nor could such balancing take place until some governmental agency begins a criminal investigation which would encompass Small's medical records.  The evidence before this Court is that there is no such investigation pending and no suspicion by either Nationwide or State Farm that Small has committed or involved in any fraud.

e.      Impact of Medicare

The Court recognizes that Nationwide and State Farm have obligations to report payment made to medicare beneficiaries pursuant to 42 U.S.C. 1395y(b)(8) [Medicare Secondary Payer Act (MSP)] in order "to permit Medicare to ensure that those parties who are primarily responsible for payment of medical costs pay them, rather than Medicare which is a secondary, rather than primary, payer." [DE 271, p. 3].   The Court further recognizes that as of October 1, 2011 Sec. 111 of Medicare, Medicaid and SCHIP Extension Act of 2007 imposes on responsible reporting entities such as State Farm and Nationwide a duty to report payment made to medicare beneficiaries.  Small correctly argues that any settlement or judgment paid out would be paid subject to counsel first identifying if any medicare reimbursements were due and if so making such payments prior to distribution to Small.  There is no evidence before this Court that Small is receiving any medicare benefits.  (e.g. see paragraph 7, Grimes Affidavit, DE 271].  Concerns Nationwide or State Farm may have with respect to liability to Medicare for recovery of conditional payments [Medicare Secondary Payer Recovery Contractor (MSPRC)] does not exceed a six (6) year statute of limitations, a period adequately covered by the proposed protective order.  In addition, to the extent any payment of settlement is based on a structured settlement paid out over time and therefor could involve Medicare reimbursement claims in the future, there is no evidence before this Court that there is or will be any structured settlement.  Therefore, such claims by Nationwide and State Farm are speculative.  Should it come to pass that Small would become a Medicare recipient prior to settlement or judgment, the insurer making the payment in settlement or judgment will have ample time under the Court Ordered retention period during which it could seek further modification of the Court's protective order with respect to the claimed need for retention of medical records.

Accordingly, the Court concludes its proposed protective order does not impede the

obligations of State Farm  or Nationwide under the Medicare Program.

f.      Fraud

State Farm and, to a lesser extent,  Nationwide, argue they must be permitted to retain Small's medical records produced in discovery in perpetuity in order to fulfill their  obligation with respect to the State of West Virginia and its aggressive fight against insurance fraud perpetrated not only by claimants, but also by attorneys, doctors, or other individuals or organizations. [see Rhodes Affidavit, DE 271 - Exhibit B].

First, there is no present evidence of fraud, suspicion of fraud, or investigation of fraud before this Court.

Second, Executive Order 13181 restricts investigative and prosecutorial authorities' use of personal health care information gathered by health oversight authorities in the pursuit of individual criminal investigation to those specific instances where a judicial officer has determined "whether there is good cause by weighing the public interest and the need for disclosure against the potential for injury to the patient, to the physician patient relationship, and to the treatment services" and no such judicial balancing has taken place with respect to Small's medical records.

Third, by adoption of an order similar to that used in Bedell II, with a term of 6 years  after settlement or final judgment as requested by Nationwide and reluctantly acquiesced in by Small, this Court satisfies the need to comply with West Virginia statutory law requiring periodic review of insurance company files under 114 C.S.R. §14-3, 15-4.2 and 15-4.4(a)(1).

Fourth, a careful reading of the state statutes and regulations reveals that during the retention of records period provided by this Court's protective order, the West Virginia Insurance Commissioner is not authorized to directly prosecute suspected fraud.  He must work through the duly constituted prosecuting authorities.  Those authorities and their grand juries have the right to

subpoena records.  In addition, records for the prosecution of fraud cases are available by subpoena or search warrant served on physicians and other health care providers, the records librarian of the Insurance Commissioner, as well as any other entity then holding records.  In addition, individuals such as Small would have a right to consent to the release of their records for use in the investigation and prosecution of a suspected fraud case.  Small's records, in the absence of his consent would also be subject to production through subpoena or search warrant directed toward him or his medical providers or both.  This Court rejects the suggestion by State Farm that the West Virginia Insurance Commissioner's letter carries the force of law and augments the statutes and regulations of the State of West Virginia.  That letter is simply an announcement of the "[i]nsurance Commissioner's interpretation and enforcement position as it relates" to a matter.  State, ex rel. Crist v. Cline, 219 W.Va. 202 , 209 (2006).

The Court's protective order generally follows the Order approved by the West Virginia Supreme Court of Appeals in Bedell II thereby avoiding the pitfalls that caught Mrs. Blank's and other counsel and Court as noted in State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell, 226 W. Va. 138, 145 (210) [Bedell I].  The Court in Bedell I clearly stated: "Remarkably, despite the plain language of the Insurance Commissioner's legislative rule, it appears that other plaintiffs in addition to Mrs. Blank have sought circuit court orders requiring the return or destruction of a claimant's medical records immediately upon conclusion of a civil action.  In 'West Virginia Informational Letter No. 172,' issued by the Insurance Commissioner in September 2009 and addressed to 'All Insurance Companies Licensed to do Business in the State of West Virginia,' the Commissioner states that

> [t]he OIC [Office of the Insurance Commissioner] has recently become aware that
> certain first and third party claimants involved in litigation concerning their
> respective claims have requested that the court order pertinent medical

*documentation to be destroyed or returned by the insurer at the conclusion of the litigation. The OIC is charged with ensuring the orderly, fair and consistent application of laws enacted by the Legislature to protect the state's consumers of insurance products and services. To that end, the Legislature has given the OIC broad authority to conduct market conduct reviews of insurer claim files on a targeted or periodic basis. Such reviews include, as set forth above, a detailed assessment of all relevant claim records maintained by insurers. The applicable insurance laws and rules demand consistent and comprehensive maintenance of all essential claim records by insurers to ensure that the laws protecting consumers of this state are being followed and that claims are being properly resolved. If records necessary for an adequate market conduct review are missing, the OIC will be substantially hindered in carrying out its legislative mandate and thus may subject insurer to penalties." Id.*

This Court's protective order does not impede the obligations of State Farm or Nationwide with respect to compliance with West Virginia Law and Regulations. Under the protective order the Small's medical records, will be available for review by the Insurance Commissioner for a period of six (6) years after final settlement.

g.    State Farm and, to a lesser degree, Nationwide argue  that they must be permitted to retain Small's medical records produced in discovery in perpetuity in order to fulfill their  obligations with respect to the other states' and the federal government's statutes and regulations with respect to the fight against insurance fraud perpetrated not only by claimants, but also by attorneys, doctors, or other individuals or organizations.

(i) Illinois

Section 133 of the Illinois statutes provides with respect to corporate Books, records, accounts and vouchers:

(1) Every domestic company shall keep its books, records, documents, accounts and vouchers in such manner that its **financial condition, affairs and operations can be ascertained and so that its financial statements filed with the Director can be readily verified and its compliance with the law determined** and may cause any or all such books, records, documents, accounts and vouchers to be photographed or reproduced on film. Any such photographs, microphotographs, optical imaging, or film reproductions of any original books, records, documents, accounts and vouchers

shall for all purposes be considered the same as the originals thereof and a transcript, exemplification or certified copy of any such photograph, microphotograph, optical imaging, or film reproduction shall for all purposes be deemed to be a transcript, exemplification or certified copy of the original. Any original so reproduced may thereafter be disposed of or destroyed if provision is made for preserving and examining such reproductions.

(2) All such original books, records, documents, accounts and vouchers, or such reproductions thereof, of the home office of any domestic company or of any principal United States office of a foreign or alien company located in this State **shall be preserved and kept available in this State for the purpose of examination and until authority to destroy or otherwise dispose of such records is secured from the Director**. Such original records may, however, be kept and maintained outside this State if, according to a plan adopted by the company's board of directors and approved by the Director, it maintains suitable records in lieu thereof. Every domestic company shall keep its securities within the State of Illinois except where:

(a) on deposit with other states of the United States of America, or political subdivision thereof; or

(b) on deposit with foreign countries where the company is licensed to transact an insurance business; or

(c) where requisite for the normal transaction of the company's business and approved by the Director.

(4) Any director, officer, agent or employee of any company who destroys any such books, records or documents without the authority of the Director in violation of this section or who fails to keep the books, records, documents, accounts and vouchers required by this section shall be guilty of a business offense and shall be fined not more than $5000.00.

The Illinois Administrative Code Title 50, Sections 901.5, 901.10 and 901.20 provide the following with respect to destruction of records held by an insurance company:

901.5

No domestic company shall destroy any books, records, documents, accounts or vouchers, hereafter referred to as "records", except in conformity with the requirements of this Part.

901.10

"Records" material means all books, papers and documentary materials regardless of physical form or characteristics, made, produced, executed or received by any domestic insurance company pursuant to law or in connection with the transaction of its business and preserved or appropriate for preservation by such company or its successors as evidence of the organization, function, policies, decisions, procedures, obligations and business activities of the company or because of the informational data contained therein. If doubt arises as to whether certain papers are "non-record" materials, it should be assumed that the documents are "records".

901.20

a) The company shall submit to the Director lists or schedules of records in its custody that are not needed in the transaction of current business or for the final settlement or disposition of any claim arising out of a policy of insurance issued by the company and are not required to determine the financial condition of the company for the period since the date of the last examination report of the company officially filed with the Department of Insurance and that do not have sufficient administrative legal or fiscal value to warrant their further preservation, or that the retention of the records is an unnecessary expense to the company and such records serve no useful purpose.

1. 1) Lists are applications for authority to destroy accumulated records.

2) Schedules are applications for continuing authority to destroy records after specified periods of time or the occurrence of specified events. (emphasis added by Court).

State Farm contends that because it is domiciled in Illinois, the entry of a protective order protecting Small's medical records places it in the untenable position of disobeying the Court's order and facing contempt or disobeying the Illinois statute and facing criminal prosecution and fines.  It argues that subjects it to arbitrary punishment in violation of its rights to due process citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 409 (2003).  In State Farm Mut. Ins. Co. v. Campbell the Court, relying on Gore and a host of prior precedents, held:   "A punitive damages award of $145 million, where full compensatory damages are $1 million, is excessive and violates the Due Process Clause of the Fourteenth Amendment."  The ruling of the Court in a bad faith action

for State Farm allegedly failing to timely settle wrongful death and personal injury claims against it's insured for the $50,000.00 policy limits when it had the opportunity to do so and its adjuster recommended it do so has no value with respect to the choice State Farm now contends it will be faced if this Court enters the protective order sought by Small.

First, State Farm will still have a record of the amounts, if any, it pays in resolution or satisfaction of Smalls claims against it. It will have the medicare payment code it or medical providers supplied for those payments. It will also have the payee information.

Second, under the order the Court is entering State Farm has six (6) years from the date of settlement or final judgment to obtain leave of the director of insurance for Illinois to remove Small's medical records from its files. There is no evidence to date that State Farm has sought and been denied permission by the Illinois Director of Illinois to dispose of a claimant's medical records five (5) or six (6) years after settlement or payment of judgment has been made and the case closed. There is no evidence that it might or would be denied such permission once requested. State Farm simply states a conclusion that it must keep the records or be in violation of Illinios law. The Illinois law provides a process for the insurance company to seek removal of the records or for off site storage of the records. [901.20 and §133(2)].

Third, there is no evidence before the Court which supports a conclusion that Small's medical records will be a necessary or required part of the records contemplated under 901.10 ["**financial condition, affairs and operations can be ascertained and so that its financial statements filed with the Director can be readily verified and its compliance with the law determined"**] by the expiration of six (6) years from the date of settlement or final judgment.

Fourth, State Farm, if it pays Small anything, will have records of its own with respect to the payments it makes and the basis on which it decided to make payment. Those records are not

Small's medical records.

Fifth, by definition in this Court's protective order, medical records do not include amounts paid and Medicare Codes relating to the amounts paid for care and treatment of Small.

Sixth, if State Farm has a contract right to a medical release authorization signed by Small [a contract right  issue raised by State Farm and on which there is no evidence (contract language) before the Court for the Court to opine], State Farm will have medical records from Small obtained outside of discovery and not subject to the Court's protective order.

Seventh, 901.10 does not specifically mention medical records.  State Farm will have other records in its files after the expiration of the six year term that Illinois can use to ascertain State Farm's "financial condition, affairs, operation" and that State Farm can use to file its financial statements.  Therefore, Small's medical records are not required.

Eighth, if State Farm must have the Small medical records under any interpretation of Illinios law (a) it has six years with proper notice to Small to request an order from this Court for use of the records and (b) a copy will be with the Court under seal and be accessible to State Farm with proper notice to Small for possible use of the records after the six year term.

(ii) New York

New York Code Title 11, Chapter 10 provides clarification to the minimum record keeping requirements of insurers doing business in the State of New York. 11 NYCRR §243.0.  Pursuant to §243.1(b) of the act, "Records means books, records, files, securities, data compilations and other documents." Section 243.2(a) requires: "In addition to any other requirement contained in Insurance Law, Section 325, any other section of the Insurance Law or other law, or any other provision of this Title, every insurer shall maintain its claims, rating, underwriting, marketing, complaint, financial, and producer licensing records, and such other records subject to examination by the superintendent,

in accordance with the provisions of this Part." The provision covering claim files is set forth in §243.2(b)(4): "A claim file for six calendar years after all elements of the claim are resolved and the file is closed or until after the filing of the report on examination in which the claim file was subject to review, whichever is longer." Financial records "necessary to verify the financial condition of an insurer, including ledgers, journals, trial balances, annual and quarterly statement workpapers, evidence of asset ownership, and source documents, for six calendar years from its creation or until after the filing of the report on examination in which the record was subject to review, whichever is longer." Id. at Sec. 243.2(b)(7).

There is no mention of individual medical records of claimants in New York Statutes Title 11, Chapter 10, Section 243.2 as cited by State Farm. Even to the extent medical records may be impliedly included in the claim files or financial records in subsections 4 and 7, they are more than adequately provided for by the terms of this Court's Protective Order. First, the New York statute requires the records be kept for a period of six (6) years from claim resolution and file closing or financial document creation. The Court's Protective Order calls for medical records maintenance for 6 years from final disposition of this case. To the extent the New York Statute requires longer than six (6) years to accommodate "the filing of the report on examination", this Court's protective order provides two possible avenues of relief to State Farm: 1) State Farm with notice to Small may seek an order from this court extending the six (6) year term or 2) State Farm with notice to Small may seek to use the digital copy of the medical records filed with the Court under seal for any required examination.

h. State Farm contends it must have Small's medical records so it can supply them or information from them to NICB and ISO as part of its role in the anti-fraud campaign. State Farm concedes NICB and ISO are private entities and that it is a paying member of each. NICB and ISO are not

involved in the evaluation and resolution of the Small claims against Nationwide or State Farm. Evaluation and resolution of claims are handled by each insurance company internally. NICB and ISO could not obtain Small's medical records on their own. Once NICB and ISO obtain Small's records[10], Small has lost all control of his own records.

Absent some present evidence that Small is the subject of fraudulent activity or is engaged in fraudulent activity[11] or Small's consent, Small's medical records produced in this case for the purpose of the insurance companies evaluating and resolving his claims (without production at trial) will not be permitted to be disseminated to foreign private entities such as NICB and ISO.

i. Havock to State Farm's Computer System. State Farm and, to a lesser degree, Nationwide argue the medical files of a claimant are so integrated in their complex computer filing systems that to order removal of the medical records from the system is impossible and would wreak havoc on the system. What the insurer's IT departments have created they can modify. Moreover, the Small medical records as defined and covered in the Court's protective order need not go beyond those select few persons within the insurance companies (State Farm and Nationwide) who are involved in the evaluation and resolution of the Small claims.

j. State Farm argues its rights protected by the First Amendment ("the rights to retain, use, and disseminate information obtained lawfully, even where obtained only by virtue of state law") will be violated by the entry of the Court's protective order citing Sorrell v. IMS Health, Inc., N0. 10-779, — U.S. — 2011 WL 2472796 (June 23, 2011); 131 S.Ct. 2653 (2011). DE 271, p. 7. The key distinction between the issues in this case and those raised in Sorrell is in the nature of the records.

---

[10]For clarification, Small's medical records produced in evidence in a public trial are not covered by this protective order.

[11]State Farm and Nationwide agree there is no such present evidence.

In Sorrell the State of Vermont promulgated legislation which prevented pharmacies from the sale of prescriber  (physicians) identifying information to "data miners" who in turn sell the data to pharmaceutical manufacturers' who provide it to their "detailers" to market and promote certain prescription drugs to targeted physicians.  As the Court found, one of the problems with the Vermont statute was that it prohibited sales of prescriber-identifying information for marketing purposes  to "data miners" without the prescriber's consent, but did not prohibit the sale of the same information to others for '"health care research', to enforce 'compliance' with health insurance formularies, or preferred drug lists; for 'care management educational communications provided to' patients on such matters as 'treatment options'; for law enforcement operations;  and for purposes 'otherwise provided by law.'"     Unlike Sorrell, Small seeks to protect his own personal health care records from dissemination to everyone not entitled to them for the evaluation and resolution (without public trial) of his claims.  His records are not public records required to be maintained for a myriad of purposes by federal and state law.  The only reason State Farm and Nationwide would have a right to get Small's records is to evaluate and resolve his claims made against them or their insured.  The obtaining of Small's medical records through discovery in the within civil action does not constitute speech as contemplated in Sorrell.  State Farm and Nationwide's desire to further disseminate Small's records once they get their hands on them does not convert those records to "protected expression."  As Justice Kennedy held: "Speech in aid of pharmaceutical marketing, however, is a form of expression protected by the Free Speech Clause of the First Amendment" requiring heightened judicial scrutiny.  Id., 2659.

        To the extent State Farm argues Plaintiff's interests are already adequately protected by existing law (DE 271, p. 8), the Court has already shown the inclination of State Farm and Nationwide to disseminate Small's medical records to those outside of the evaluation and resolutions

process and even to those outside of the confines of State Farm and Nationwide for purposes wholly unrelated to the original purpose of providing the records — discovery in this civil action.   State Farm and Nationwide would have Small's information given to others without Small's knowledge, consent or ability to control.   To State Farm and Nationwide's assertions that they have procedures in place to prevent the unauthorized disclosure of Small's medical records, such procedures do not protect against unauthorized disclosure and use and dissemination by ISO and NICB over which State Farm and Nationwide have no control.

To the extent State Farm and Nationwide argue their "interest are at stake in courts' considerations of protective orders such as the one at issue here" (DE 271, p. 8), this Court has recognized the admonition of Justice Powell in Seattle Time Co. v. Rhinehart, 467 U.S. 20 (1984). The protective order is being entered on a showing of good cause.   It "is limited to the context of pretrial discovery, and does not restrict the dissemination of the information if it is gained from other sources in addition to the discovery."   Id.     More important, "it does not offend the First Amendment." Id.

Perhaps the most relevant holdings in Sorrell which support the conclusions of this Court are the following:

> It is, of course, clear that information obtained through civil discovery authorized by modern rules of civil procedure would rarely, if ever, fall within the classes of unprotected speech identified by decisions of this Court. In this case, as petitioners argue, there certainly is a public interest in knowing more about respondents. This interest may well include most—and possibly all—of what has been discovered as a result of the court's order under Rule 26(b)(1). It does not necessarily follow, however, that a litigant has an unrestrained**2207 right to disseminate information that has been obtained through pretrial discovery. For even though the broad sweep of the First Amendment seems to prohibit all restraints on free expression, this Court has observed that "[f]reedom of speech ... does not comprehend the right to speak on any subject at any time." American Communications Assn. v. Douds, 339 U.S. 382, 394–395, 70 S.Ct. 674, 681–682, 94 L.Ed. 925 (1950).
>
> The critical question that this case presents is whether a litigant's freedom

comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used. In addressing that question it is necessary to consider whether the "practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression" and whether "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974); see Brown v. Glines, 444 U.S. 348, 354–355, 100 S.Ct. 594, 599–600, 62 L.Ed.2d 540 (1980); Buckley v. Valeo, 424 U.S. 1, 25, 96 S.Ct. 612, 637–638, 46 L.Ed.2d 659 (1976).

## A

At the outset, it is important to recognize the extent of the impairment of First Amendment rights that a protective order, such as the one at issue here, may cause. As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes. As the Rules authorizing discovery were adopted by the state legislature, the processes thereunder are a matter of legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. Zemel v. Rusk, 381 U.S. 1, 16–17, 85 S.Ct. 1271, 1280–1281, 14 L.Ed.2d 179 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information"). Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations. See In re Halkin, 194 U.S.App.D.C., at 287, 598 F.2d, at 206–207 (Wilkey, J., dissenting).[FN18]

FN18. Although litigants do not "surrender their First Amendment rights at the courthouse door," In re Halkin, 194 U.S.App.D.C., at 268, 598 F.2d, at 186, those rights may be subordinated to other interests that arise in this setting. For instance, on several occasions this Court has approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant. See Nebraska Press Assn. v. Stuart, 427 U.S. 539, 563, 96 S.Ct. 2791, 2804–2805, 49 L.Ed.2d 683 (1976); id., at 601, and n. 27, 96 S.Ct., at 2823 and n. 27 (BRENNAN, J., concurring in judgment); Oklahoma Publishing Co. v. District Court, 430 U.S. 308, 310–311, 97 S.Ct. 1045, 1046–1047, 51 L.Ed.2d 355 (1977); Sheppard v. Maxwell, 384 U.S. 333, 361, 86 S.Ct. 1507, 1521–1522, 16 L.Ed.2d 600 (1966). "In the conduct of a case, a court often finds it necessary to restrict the free expression of participants, including counsel, witnesses, and jurors." Gulf Oil Co. v. Bernard, 452 U.S. 89, 104, n. 21, 101 S.Ct. 2193, 2201–2202 n. 21, 68 L.Ed.2d 693 (1981).

Moreover, pretrial depositions and interrogatories are not public components

of a civil trial.<u>FN19</u> Such proceedings **2208 were not open to the public at common law, <u>Gannett Co. v. DePasquale, 443 U.S. 368, 389, 99 S.Ct. 2898, 2910, 61 L.Ed.2d 608 (1979)</u>, and, in general, they are conducted in private as a matter of modern practice. See <u>id., at 396, 99 S.Ct., at 2913–2914</u> (BURGER, C.J., concurring); Marcus, <u>Myth and Reality in Protective Order Litigation, 69 Cornell L.Rev. 1 (1983)</u>. Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

<u>FN19.</u> Discovery rarely takes place in public. Depositions are scheduled at times and places most convenient to those involved. Interrogatories are answered in private. Rules of Civil Procedure may require parties to file with the clerk of the court interrogatory answers, responses to requests for admissions, and deposition transcripts. See <u>Fed.Rule Civ.Proc. 5(d)</u>. Jurisdictions that require filing of discovery materials customarily provide that trial courts may order that the materials not be filed or that they be filed under seal. See ibid.; Wash.Super.Ct.Civil <u>Rule 26(c)</u>. Federal district courts may adopt local rules providing that the fruits of discovery are not to be filed except on order of the court. See, e.g., C.D.Cal.Rule 8.3; S.D.N.Y.Civ.Rule 19. Thus, to the extent that courthouse records could serve as a source of public information, access to that source customarily is subject to the control of the trial court.

Finally, it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny. See *34 <u>Gannett Co. v. DePasquale, supra, at 399, 99 S.Ct., at 2915</u> (POWELL, J., concurring). As in this case, such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes. In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context. Therefore, our consideration of the provision for protective orders contained in the Washington Civil Rules takes into account the unique position that such orders occupy in relation to the First Amendment.

k.     In deciding whether to grant a protective order and what order to craft, this Court weighed

the need for the records to combat fraud against the privacy rights of the individual citizen.   The

Court recognizes the need to combat fraud is a matter of great public importance.  However, the

Protective Order as crafted provides State Farm, Nationwide, and West Virginia with the tools for

a period of six (6) years plus without denigrating forever the rights of the individual (Small) to

ultimate privacy in some of life's most intimate details - his medical records.

### ORDER

For the reasons herein stated, the Court **GRANTS PLAINTIFF'S MOTION FOR A**

**PROTECTIVE ORDER [DE 90]** and imposes the following protective order covering the medical

records of Toby Lynn Small obtained through discovery in this civil action.

### PROTECTIVE ORDER

Toby Lynn Small [hereinafter referred to as "Small"] is a Plaintiff in a personal injury action arising out of a February 2009 accident.   Small alleges that on 20 February 2009 he slid on an icy bridge along the Southbound lane of I-79 near mile marker 96.  He either slid or drove  into the median.  He further alleges he got out of his vehicle to survey any damage to his vehicle.  As Small was standing outside his vehicle, a vehicle driven by James R. Ramsey slid on ice and in front of a 18 wheeled truck. The 18 wheeled truck ultimately crossed from the slow lane into the passing lane and into the median where it struck a high tension median cable barrier.  Some portion of the high tension median barrier system is alleged to have contacted Small.  Small claims he was seriously injured.

After Small's case was removed to federal court, the District Judge entered an Agreed Order dated April 5, 2011[DE 183] bifurcating Small's bad faith and UTPA (medical expense ) Count IV claims against his insurer, State Farm Mutual Auto. Ins. Co.  [hereinafter called "State Farm"], and its personnel from Small's pending accident liability and personal injury claims against Ramsey, Kelley Wayne, Trinity, McNeal, Amerigas, Snyder & Associates. Nationwide Insurance Company [hereinafter called "Nationwide"]  insures one or more of the non-bifurcated party defendants in the liability action.

Small and Intervenor Nationwide became embroiled in a dispute over the terms and provisions of a protective order during the late spring of 2011 [DE 248].  State Farm was joined in the dispute. For reasons stated in a written Memorandum/Opinion and Order the Court now issues this protective order with respect to medical records obtained in this civil action through discovery and not obtained through another means or source.

This Protective Order recognizes and protects the confidentiality of Toby Lynn Small's medical records produced in discovery in this civil action to Nationwide directly or indirectly through its insured[s] or the attorney representing their insured[s].

This Protective Order applies to, recognizes and protects the confidentiality of Toby Lynn Small's medical records if and when State Farm receives[12] any such records through discovery in this civil action.  It protects said medical records whether they are received directly or indirectly, including but not limited to attorneys representing it or others.

This Protective Order provides confidentiality and protection regarding Toby Small's, hereinafter referred to as "Small",  medical records[13] produced through discovery in this civil action to any of the Defendants, their insurers, or any other person or entity identified herein including but not limited to Nationwide Mutual Insurance Company, State Farm Mutual Auto Insurance Company [except as herein specifically excluded] and/or their agents and employees.

If Small and any party to this civil action or insurer of a party to this civil action have reached an agreement for the disclosure and use of Small's medical records in this civil action while awaiting the decision of the Court, at their option, the parties may continue under their separate agreement or deem the medical records so produced under the separate agreement as discovery in this case and the same shall thereafter fall under the protection of this order.

Accordingly, the following terms of confidentiality shall apply to Small's medical records whether the same were produced in discovery in this civil action prior to the entry of this order or after:

1)      Except for any disclosure required as part of an examination of the insurance company by the Insurance Commissioner's Office for West Virginia pursuant to W.Va. Code §33-2-9 and the regulations promulgated thereunder or by the expressed prior order of this Court, Defendants, their insurers, or any other person or entity herein identified, including but not limited to: Nationwide Mutual Insurance Company, State Farm Mutual Auto Insurance Company and/or their agents and employees, shall not distribute copies of or  disclose orally or in summary form, any or any portion of Small's produced medical records to any person or entity outside of  their clients in this civil action, their office staff personnel,  their employees, and experts,  including but not limited to any necessary servants, agents, and employees of the same,  as is necessary to assist in evaluation, settlement, or preparation for trial of this case.

2)      Each  person  who receives disclosure of Small's medical records  shall be advised, shall

---

[12]State Farm contends it has a contract right to Small's medical records.  The Court has not ruled on any such alleged contract right.  Therefore, any of Small's records obtained by State Farm through a release or authorization signed by Small pursuant to any contract provision in his insurance contract with State Farm are excluded from the provisions of this Protective Order.

[13]As used herein "medical records" means not only originals  of medical records pertaining to the past, present and ongoing medical care and treatment of Small, but any copy, including digital copy, or summary of those medical records or any portion thereof.  It specifically includes "those documents describing the health of and medical treatment rendered to and received by" Small. (Adopted from the language of State ex rel State Farm Mut. Auto. Ins. Co. v. Bedell, 2011 WL 1486100 (April 1, 2011) [Bedell II].  It does not include medicare/mdicaide treatment and payment codes and the amounts paid in satisfaction of a claim made by a medical provider under such medicare/medicaide code.

review, shall be provided with a copy of, and shall sign  this protective order thereby acknowledging that he or she understands and is bound by the terms and provisions hereof and is subject to the jurisdiction of this Court with respect to interpretation and enforcement of the same.

3)      Counsel for any party, including but not limited to counsel appearing for Nationwide and State Farm, making disclosure shall be responsible for strict compliance with the requirements outlined in paragraph 2 hereof and shall be responsible for the maintenance of a list of all to whom disclosure is made and for the collection and maintenance of the copies of this order as signed by those to whom disclosure has been made.

4)      If all or any part of the medical records herein protected must be made a part of any pleading, including motion and/or memorandum of law in support of any motion, it shall be filed under seal pursuant to this Order and a copy thereof shall be furnished to this Court after being marked "CONFIDENTIAL."

5)      Upon final disposition[14] of this civil action counsel for each party receiving or  making any disclosure of Small's medical records, except for those medical records disclosed to the insurance company required to maintain such records pursuant to W.Va. Law: shall collect the medical records disclosed; account for the same by comparing those retrieved to the record of those disclosed; destroy the medical records returned; and provide written certification to Small's counsel of the destruction of the same.

6)      Upon the expiration of the period prescribed by W.Va.C.S.R. §114-15-4.2(b) or 6 calendar years from the date of final disposition of this civil action including the exhaustion of any and all appeals or time periods for such appeals and the entry of an order removing it from the docket of the Court, whichever shall last occur, such insurance carrier shall deliver Small's disclosed medical records[15] to its designated legal counsel in this case who shall then destroy and certify destruction of the same.

7)      Prior to the destruction of any of Small's disclosed medical records, counsel for any insurance carrier to which disclosure was made, may make one complete digital copy of said medical records and shall file the same with the Court under seal in compliance with the provisions of paragraphs 6 and 8 of this Order.

---

[14]Final Disposition for purposes of this protective order means: Entry of the last dismissal order marking the conclusion of the case as to all parties and all claims.  It includes the exhaustion of any and all appeals or time periods for such appeals and the entry of an order removing it from the docket of the Court.

[15]This Court adopts the ruling in Bedell II with respect to medical records not requiring insurers to destroy their claims files or attorney-client correspondence in order to comply with this mandate.  Moreover, under Bedell II, if the insurer's files contain references to Small's medical records, those files are not required to be returned or destroyed *in toto.*  Instead, they shall be redacted to remove those portions that contain the records as originally disclosed, summaries of the original instruments disclosed in order to protect Small's privacy interest in and the confidentiality of his medical records that are the subject of this protective order.  The insurance companies shall be entitled to retain medicare/medic aide  treatment and payments codes and amounts paid in satisfaction of a claim made by a Small medical provider under such medicare/medic aide codes.

8)    In the event the insurance carrier believes federal regulations or other state regulations or court orders require retention of the Small medical record beyond the period herein prescribed for destruction [paragraph 6], Small's digitalized medical record being held and maintained by counsel shall thence be filed in the record of this case under seal to be therein maintained until the further order of this Court.

9)    All other copies of the disclosed medical records but for that copy that is digitalized and filed pursuant to paragraph 7 hereof shall be destroyed in accord with paragraphs 5 and 6 of this Order.

10)   Upon destruction of the disclosed medical records, counsel for the disclosing party shall file with the Court and serve on Small's counsel the written certification of such destruction. Counsel for the disclosing party shall retain in his files and file with the Court under seal digital copies of the protective orders as signed by each person or entity who received Small's medical records under paragraph 2 hereof.

11)   It shall not be a violation of this protective order for anyone who receives disclosure of Small's medical records to disclose all or any portion of the same, provided he has the prior expressed written consent of Small, his administrators or executors or a valid order of a court of competent jurisdiction authorizing such disclosure.

12)   In the absence of consent of Small pursuant to paragraph 11 hereof, any person or entity who believes they are required to produce all or any portion of Small's medical records before destruction under this protective order may with notice to Small apply for leave of this Court to make such disclosure from the digitalized copy of the medical file held under Seal.

13)   Nothing in this order shall be construed to prevent an insurer during the period it is in possession of Small's medical records from disclosing the same pursuant to a properly issued subpoena duces tecum, Grand Jury Subpoena or Court Order, provided further that, unless it is prohibited by law or Court order from disclosing the subpoena request or order to Small, it give Small and his counsel at least 14 calendar days written notice of the subpoena request or order prior to such disclosure and, if the request as made does not give sufficient time to provide the14 calendar days of notice, the insurer shall make reasonable efforts to obtain a delay from the appropriate Court or government agency in order for it to provide the 14 calendar days of prior notification.

14)   Small may petition this Court at any time after the expiration of the 6 year term provided for in paragraph 6 for the return or destruction of his medical records filed with the Court pursuant to paragraphs 6, 7, and 8 provided he shall first give the insurance company affected at least 14 calendar days written notice of such petition.

15.   Certified Mail Return Receipt will constitute evidence of delivery of the written notice contemplated in paragraphs 13 and 14.

---

It is so **ORDERED.**

For docket entry purposes the clerk is directed to remove DE 90, DE 109, DE 118, DE 282, DE 307, and DE 311 from the docket of motions actively pending before this Court.

The clerk is further directed to provide electronic notice to all counsel of record of the entry of this Order.

Dated: March 6, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE